# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: INCRETIN-BASED THERAPIES PRODUCTS LIABILITY LITIGATION | CASE NO. 13md2452-AJB (MDD)<br><br>ORDER ON DISCOVERY DISPUTE REGARDING FACT SHEETS<br><br>(ECF NO. 226) |

On December 19, 2013, the parties filed an Amended Joint Submission Regarding Plaintiffs' And Defendants' Fact Sheets (ECF No. 226). In the submission, the parties bring before the Court two disputes: 1. Plaintiffs seek relief from the requirement that they provide a detailed Plaintiff's Fact Sheet in every case filed in this Multi-District Litigation and any related case in this Court; and 2. A dispute regarding a proposed Defendant's Fact Sheet. Plaintiffs' obligation to file Fact Sheets has been stayed pending resolution of this dispute. (ECF No. 200).

1. Plaintiff's Fact Sheet

The Plaintiff's Fact Sheet ("PFS") was the product of negotiations between the parties with some assistance from the Court. The parties filed a Joint Motion Submitting Plaintiff Fact Sheet on May 3, 2013 which was implemented by Order of the Court on June 17, 2013, in one of

the early filed cases. *Scott v. Merck & Co., Inc., et al.,* 12cv2549, ECF Nos. 31, 33. It was expressly intended to apply to all related cases filed in this District. (*Id.*)

Plaintiffs assert that the PFS has proven to be unduly burdensome and propose a "Short Form Plaintiff Fact Sheet" be used in its place. Plaintiffs suggest that the Short Form is sufficient for the parties to use in determining appropriate cases for in-depth discovery as potential bellweather trials. The original PFS, they agree, can be completed in the cases selected for in-depth treatment.

Defendants assert that the original PFS is essential in evaluating the cases for bellweather treatment. In particular, Defendants state that the PFS was intended to obviate the need for protracted written discovery directed to each Plaintiff and that the information requested is required as early as possible considering the disease at issue here, pancreatic cancer, often is terminal. According to Defendants, the Short Form proposed by Plaintiffs is insufficient for their needs.

The Court finds good cause lacking to modify the negotiated PFS. The process of negotiating the PFS was protracted, involved the same experienced counsel for both sides and some guidance from the Court. To the extent that the real issue concerns the deficiency notices issued by Defendants after review of a PFS, the Order implementing the PFS has a detailed dispute procedure. The parties are welcome to discuss that between themselves and, if no agreement can be reached to modify that aspect of the Order, can bring the matter before the Court. As it now stands, however, the dispute before the Court only regards whether to institute a Short Form PFS in place of the original PFS reserving the use of the original PFS for cases selected for in-depth discovery and bellweather trials. On that issue, the Court finds for Defendants.

2. <u>Defendant's Fact Sheet</u>

Also before the Court is a dispute over a proposed Defendant's Fact Sheet ("DFS"). It appears that Defendants are not averse to providing a DFS; the dispute is over timing and the scope of the DFS.

Defendants assert that the DFS is not intended as a counterpart to the PFS. The PFS likely is the only early discovery to be provided by the individual Plaintiffs unless and until their cases are selected for more detailed review. Defendants state that they are providing substantial discovery to Plaintiffs; the DFS only serves as a supplement. Defendants assert that the DFS should be focused on information regarding specific Plaintiffs and should not encompass generic discovery being handled through more traditional avenues.

The Court agrees with the Defendants regarding the nature and scope of the DFS. Unfortunately, that does not settle the matter. For that, the Court must consider each disputed item.

First, however, there is the question of timing. The motion leaves open the issue regarding whether the DFS is to be provided in all cases or only in cases selected for more detailed treatment. A third alternative is for the DFS to be two-tiered: provide basic information in a DFS to be provided in all cases followed by a more detailed exposition for cases selected for detailed review. Essentially, this is what the Plaintiffs were looking for with a short form PFS. The question is whether this approach, rejected by the Court in the PFS context, works for the DFS. The Court finds that the parties should address that issue and decide for themselves. The Court will provide some guidance in ruling on the disputed items below.

A. <u>Sources of Information</u>

The first dispute concerns whether Defendants must search beyond

1  their reasonably accessible databases into custodial files maintained by
2  individual sales representatives to complete the DFS.  Defendants assert
3  that this level of search is unduly burdensome at this stage of the
4  litigation.  Defendants appear agreeable to providing a DFS in all cases if
5  their search for information is limited to their databases and also appear
6  agreeable to providing results from a search of custodial files for cases
7  selected for more detailed review.
8        The Court finds that if the parties agree that a DFS is necessary
9  early in the case, that Defendants need produce responsive information
10 from its readily accessible databases.  Defendants must search and
11 provide responsive information from custodial files only in cases selected
12 for detailed review.  The parties may choose to agree that the detailed
13 DFS is all that is necessary and only in cases selected for detailed review.
14
15       B.  <u>Relevant Time Period</u>
16       Plaintiffs want the time period for DFS information to start from
17 the date of FDA approval of the medication and end with the due date of
18 the PFS for each Plaintiff.  Defendants want the time period to run from
19 the date of the launch of each medication to the end date of each
20 Plaintiff's prescription period for each product, as determined from
21 Plaintiff's prescription records.
22       Plaintiffs want the longer period just in case there may some
23 relevant information available prior to product launch and after each
24 lawsuit was filed.  Defendants want more certainty regarding the time
25 periods covered and want to rely on prescription records to identify when
26 each Plaintiff was provided the subject medication.
27       This "dispute" should have been resolved by the parties.  Having
28 thrown up their hands and left it to the Court, the Court finds

Defendants' position to be more reasonable.

    C.  <u>Plaintiff-Specific Advertising</u>

Plaintiffs want Defendants to determine whether they advertised their medications in the "media market" in which each Plaintiff lived at the time the Plaintiff used a subject medication (apart from national advertising). Defendants assert that this sort of discovery is best handled generally and not by using a Plaintiff-by-Plaintiff approach.

The Court agrees with Defendant that this sort of discovery is best handled on an MDL-wide approach and not case-by-case.

    D.  <u>Document Requests</u>

In connection with the DFS, Plaintiffs request the production of a variety of documents. Defendants object that Plaintiffs do need require this information with every DFS. There are six categories of documents at issue. (*See* ECF No. 226 at 10). Two of the requests are easy to dispose of: Request number 10, seeking copies of advertisements, outside of national advertising campaigns, directed toward the media market containing the Plaintiff, properly should be handled in the context of general discovery. Otherwise, Defendants may be required repeatedly to produce to the same materials for Plaintiffs residing in the same general geographic area. Request number 11 also fails as not identifying any particular information - it is a catchall provision which the Court cannot endorse or effectively enforce.

Requests 7 and 8 relate to communications with Plaintiff's health care providers about the product, not about the Plaintiff. Those requests similarly should be part of general discovery regarding Defendants communications with health care providers.

Requests 6 and 9 concern communications regarding the particular Plaintiffs. Those communications certainly may be relevant. To the

1  extent that Defendants' databases reflect such communications, they
2  must be produced with the DFS.  For cases selected for in-depth
3  discovery, such communications as may exist in custodial files must also
4  be produced.

## Conclusion

Plaintiffs' motion to modify the PFS process is **DENIED.**  The stay granted to Plaintiffs in submitting a PFS for cases filed after November 25, 2013, is hereby lifted.  Inasmuch as the stay lasted approximately thirty days, Plaintiffs are accorded an extra thirty days in each case filed after November 25, 2013, and the date of this Order, to submit the PFS to Defendants.  The parties may, if they choose, agree to a different schedule and may submit a proposed Order to that effect to the Court.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

Regarding the DFS disputes, the Court finds that Defendants may rely solely on database searches to complete the DFS if the DFS is required in every case.  If the DFS only is required for cases selected for in-depth review, Defendants must also search relevant custodial files.  The parties may agree on a two-tiered process.  If the parties cannot agree, they may submit that specific dispute to the Court for resolution.

Regarding the specific disputes, the Court finds that the relevant time period is product launch through the end of the prescribed period of use, advertising should be addressed in general discovery, not in the DFS, and that Defendants need only produce documents reflecting communications with or about specific Plaintiffs from their databases, if the DFS is required in every case, or from all sources for cases selected for in-depth treatment.

IT IS SO ORDERED.

DATED: December 27, 2013

Hon. Mitchell D. Dembin
U.S. Magistrate Judge