1

1           UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF CALIFORNIA

2

    BEFORE THE HONORABLE ANTHONY J. BATTAGLIA, JUDGE PRESIDING

3

4
                                    ) CASE NO. 13-MD-02452-AJB
5   IN RE INCRETIN-BASED THERAPIES, )
    PRODUCTS LIABILITY LITIGATION   )
6                                   )
                                    )
7                                   )
                                    ) SAN DIEGO, CALIFORNIA
8   ------------------------------- ) SEPTEMBER 10, 2014
                                    ) 10:20 A.M.
9   THIS DOCUMENT RELATES TO ALL CASES )
    _____  ___)

10

11

12           REPORTER'S TRANSCRIPT OF PROCEEDINGS
              RE: CASE MANAGEMENT CONFERENCE

13

14

15

16

17

18

19

20

21

22

23
    OFFICIAL REPORTER:      JEANNETTE N. HILL, C.S.R.
24                          (619)702-3905

25

                    SEPTEMBER 10, 2014

```
 1   TELEPHONIC APPEARANCES:

 2   FOR PLAINTIFFS:
                         MICHAEL K. JOHNSON, ESQ.
 3                       JOHNSON BECKER PLLC
                         33 SOUTH SIXTH STREET, SUITE 4530
 4                       MINNEAPOLIS, MINNESOTA 55402

 5                       HUNTER J. SHKOLNIK, ESQ.
                         NAPOLI BERN RIPKA SHKOLNIK & ASSOCIATES
 6                       111 CORPORATE DRIVE, SUITE 225
                         LADERA RANCH, CALIFORNIA 92694
 7
                         RYAN L. THOMPSON, ESQ.
 8                       WATTS GUERRA, LLP
                         5250 PRUE ROAD, SUITE 525
 9                       SAN ANTONIO, TEXAS 78240

10                       MAXWELL S. KENNERLY, ESQ.
                         THE BEASLEY FIRM LLC
11                       1125 WALNUT STREET
                         PHILADELPHIA, PA 19107
12
                         TOR A. HOERMAN, ESQ.
13                       CHAD FINLEY, ESQ.
                         JACOB W. PLATTENBERGER, ESQ.
14                       TOR HOERMAN LAW LLC
                         101 WEST VANDALIA STREET, SUITE 350
15                       EDWARDSVILLE, ILLINOIS 62025

16                       GAYLE M. BLATT, ESQ.
                         CASEY GERRY SCHENK FRANCAVILLA BLATT &
17                       PENFIELD LLP
                         110 LAUREL STREET
18                       SAN DIEGO, CALIFORNIA 92101

19

20

21

22

23

24

25
```

SEPTEMBER 10, 2014

```
1    TELEPHONIC APPEARANCES:

2    FOR THE DEFENDANTS:
                         ANA REYES, ESQ.
3                        WILLIAMS & CONNOLLY
                         725 TWELFTH STREET, N.W.
4                        WASHINGTON, D.C. 20005

5                        KENNETH KING, ESQ.
                         PEPPER HAMILTON, LLP
6                        620 EIGHTH AVENUE
                         NEW YORK, NEW YORK 10018
7
                         HEIDI LEVINE, ESQ.
8                        CHRISTOPHER YOUNG, ESQ.
                         DLA PIPER LLP
9                        1251 AVENUE OF THE AMERICAS
                         NEW YORK, NEW YORK 10020
10
                         ALLAN ANDREW THOEN, ESQ.
11                       PEPPER HAMILTON LLP
                         3000 TWO LOGAN SQUARE
12                       EIGHTEENTH AND ARCH STREETS
                         PHILADELPHIA, PENNSYLVANIA 19103-2799
13
                         AMY J. LAURENDEAU, ESQ.
14                       O'MELVENY & MEYERS LLP
                         610 NEWPORT CENTER DRIVE, 17TH FLOOR
15                       NEWPORT BEACH, CALIFORNIA 92660-6429

16

17

18

19

20

21

22

23

24

25
```

SEPTEMBER 10, 2014

1    **SAN DIEGO, CALIFORNIA; WEDNESDAY, SEPTEMBER 10, 2014; 10:20 AM**

2                **DEPUTY CLERK:**  NUMBER ONE ON CALENDAR, CASE NUMBER

3    13MD2452, IN RE INCRETIN MIMETICS PRODUCTS LIABILITY

4    LITIGATION, ON FOR DISCOVERY CONFERENCE.

5                **THE COURT:**  ALL RIGHT.  GOOD MORNING OR AFTERNOON,

6    DEPENDING ON WHERE YOU ALL ARE.  THIS IS JUDGE BATTAGLIA, THAT

7    IS GOING TO PRESIDING OVER THE HEARING TODAY.

8                WE DIDN'T, I DON'T THINK, GET A LIST OF ATTENDEES.

9    SO WHY DON'T WE, STARTING WITH THE PLAINTIFFS, HAVE YOU

10   IDENTIFY YOURSELVES SLOWLY, SPELLING THE LAST NAMES SO THE

11   REPORTER CAN COMPLETE THE RECORD.  SO IN NO PARTICULAR ORDER,

12   SOMEBODY GO FIRST ON THE PLAINTIFFS' SIDE.

13               **MR. JOHNSON:**  GOOD MORNING, YOUR HONOR.  THIS IS MIKE

14   JOHNSON.

15               **THE COURT:**  OKAY.  AND WHO ELSE?

16               **MR. SHKOLNIK:**  GOOD MORNING, YOUR HONOR.  THIS IS

17   HUNTER SHKOLNIK.

18               **THE COURT:**  OKAY.  THANKS, MR. SHKOLNIK.

19               NEXT, IF ANYONE.

20               **MR. KENNERLY:**  GOOD MORNING, YOUR HONOR.  THIS IS MAX

21   KENNERLY, K-E-N-N-E-R-L-Y.

22               **THE COURT:**  ALL RIGHT.  THANKS.

23               NEXT.

24               **MR.  THOMPSON:**  RYAN THOMPSON FOR THE PLAINTIFF.

25               **MS. BLATT:**  GAYLE BLATT --

1            **THE COURT:**  I HAVE MR. THOMPSON DOWN.  I THINK I

2   HEARD MS. BLATT, BUT CONFIRM THAT ONE WAY OR ANOTHER.

3            **MS. BLATT:**  YES, YOUR HONOR.  GAYLE BLATT.

4            **THE COURT:**  THANK YOU.  AND ANYBODY ELSE?  IT LOOKS

5   LIKE NOT.

6   (PHONE CUTS OUT)

7            **THE COURT:**  TRY THAT AGAIN.

8            **MR. HOERMAN:**  GOOD MORNING, JUDGE.  TOR HOERMAN FOR

9   THE PLAINTIFFS.  HERE WITH ME IS CHAD FINLEY.

10            **THE COURT:**  MR. HOERMAN AND THEN MR. FINLEY.

11            **MR. PLATTENBERGER:**  GOOD MORNING, YOUR HONOR.  JACOB

12   PLATTENBERGER FOR THE PLAINTIFFS.

13            **THE COURT:**  GOT YOU.  WHO ELSE?

14            **MR. JOHNSON:**  I THINK THAT IS IT FOR PLAINTIFFS, YOUR

15   HONOR.

16            **THE COURT:**  GREAT.  LET'S GO TO THE DEFENSE SIDE OF

17   THE CALL AND GIVE US YOUR NAME AND THE PARTY YOU REPRESENT.

18            **MS. REYES:**  GOOD MORNING, YOUR HONOR.  THIS IS ANA

19   REYES FOR MERCK.

20            **THE COURT:**  OKAY.  THANK YOU.

21            **MR. KING:**  GOOD MORNING, YOUR HONOR.  KENNETH KING

22   FOR ELI LILLY AND COMPANY.

23            **THE COURT:**  THANKS, MR. KING.

24            **MS. LEVINE:**  YOUR HONOR, THIS IS HEIDI LEVINE AND

25   CHRISTOPHER YOUNG ON BEHALF OF NOVO NORDISK.


SEPTEMBER 10, 2014

1        **THE COURT:**  FOR NOVO MS. LEVINE AND CHRIS --

2        **MS. LEVINE:**  YOUNG.

3        **THE COURT:**  THANK YOU.

4        **MR. THOEN:**  THIS IS ALLAN THOEN, T-H-O-E-N, FOR ELI

5    LILLY.

6        **THE COURT:**  THANK YOU.  ANYBODY ELSE?

7        **MS. LAURENDEAU:**  GOOD MORNING, YOUR HONOR.  AMY

8    LAURENDEAU, L-A-U-R-E-N-D-E-A-U, FOR AMYLIN PHARMACEUTICALS.

9        **THE COURT:**  THANKS.  ANYBODY ELSE?  SOUNDS LIKE NOT.

10       SO THIS IS A DISCOVERY CONFERENCE ADDRESSING ISSUES,

11   ESSENTIALLY, IN THE FORM OF A MOTION TO COMPEL AGAINST

12   DEFENDANTS, WITH REGARD TO ANALYSES OF CAUSAL ASSOCIATION.

13   THAT IS HOW THE DOCUMENTS ARE ENTITLED.

14       IT RELATES SPECIFICALLY, AS I CAN TELL FROM REVIEWING

15   ALL THE PAPERWORK, TO INTERROGATORIES 25 AND 26, AND DOCUMENT

16   REQUESTS 43, 44, 45, 47, 50, 52, 57 AND 58.

17       ALL OF THESE DOCUMENT REQUESTS/INTERROGATORIES ARE

18   INTERRELATED WITH REGARD TO DISCOVERY REGARDING CAUSAL

19   CONNECTION BETWEEN THE DEFENDANTS PHARMACEUTICALS AND

20   PANCREATIC CANCER.

21       AND HAVING READ THE DOCUMENTS, I AM WELL-VERSED IN

22   WHERE YOU ARE AT THE MOMENT.  BUT AS I PROMISED IN THE

23   DISCOVERY PROTOCOL, I WOULD ENTERTAIN THE PLAINTIFFS GIVING ME

24   SOMETHING IN THE WAY OF A REPLY, IF THERE IS ANYTHING THEY WANT

25   TO ADD.  AND CERTAINLY THE DEFENSE CAN WEIGH IN ON THE NEW

1    MATTER IF IT'S ADDRESSED BY WAY OF REPLY.

2              AND WHEN YOU FOLKS SPEAK, TO THE EXTENT THAT YOU ARE

3    SHARING SOME OF THE DUTIES, MAKE SURE TO REIDENTIFY YOURSELF BY

4    NAME AND THEN COMMENT.  SO WHO WANTS TO SPEAK FIRST ON BEHALF

5    OF THE PLAINTIFFS IN THE NATURE OF A REPLY OR FURTHER COMMENT?

6              **MR. KENNERLY:**  YOUR HONOR, THIS IS MAX KENNERLY.  I

7    WILL BE DOING THE BULK OF THE RESPONSE HERE.

8              **THE COURT:**  OKAY.  GO AHEAD.

9              **MR. KENNERLY:**  THERE IS FIVE TOPICS I WANT TO COVER,

10   AND UNDERSTANDING THAT THE COURT DOES NOT WANT TO HEAR ANYTHING

11   REITERATED THAT IS IN THE BRIEF.

12             THE FIRST IS WHAT IT IS THAT WE WANT DEFENDANTS TO

13   DO.  AND AS WE READ DEFENDANTS' RESPONSE, THERE IS A NUMBER OF

14   ARGUMENTS ABOUT HOW DEFENDANTS ARE NOT OBLIGATED TO GO THROUGH

15   THEIR OWN CUSTODIAL PRODUCTION TO FIND RELEVANT DOCUMENTS FOR

16   US.

17             WE AGREE WITH THAT.  THAT'S NOT WHAT WE'RE ASKING

18   THEM TO DO.  WE'RE NOT ASKING THEM TO DO AN INDEPENDENT SEARCH

19   OF THE NDA OR ANYTHING ELSE LIKE THAT.  WHAT WE'RE ASKING THEM

20   TO DO IS TO GO BACK, SPEAK WITH KNOWLEDGEABLE EMPLOYEES,

21   PRESENT THEM WITH THE REQUESTS -- OR SOME, YOU KNOW,

22   LAWYER-STREAMLINED VERSION OF THE REQUESTS, ASK THEM WHAT

23   INFORMATION THEY KNOW, WHAT DOCUMENTS THEY HAVE, AND THEN

24   REPORT THAT BACK IN DISCOVERY.  SO IN MANY WAYS IT'S KIND OF

25   TALKING BACK AND FORTH ON TWO SIDES.

1          MOVING TO THE SECOND ISSUE.  THE DEFENDANTS' RESPONSE

2    SAYS THAT THIS IS NOT A MOTION ABOUT, QUOTE, MISSING DISCOVERY,

3    CLOSE QUOTE.  AND THIS GOES BACK TO WHAT IT IS THAT WE'RE

4    ASKING THEM TO DO.

5          IT IS ABOUT MISSING DISCOVERY.  MERCK, IN ITS

6    RESPONSE, TALKED ABOUT THE PRODUCT DEVELOPMENT TEAM, ABOUT THE

7    SAFETY REVIEW COMMITTEE, AND ABOUT THE RISK MANAGEMENT SAFETY

8    TEAM.

9          THE REFERENCE THEY GIVE -- THIS IS A SMALL STACK OF

10   DOCUMENTS; AT LEAST SMALL COMPARED TO THE OVERALL PICTURE.

11   IT'S ABOUT 21,000 PAGES, THE BATES RANGE THAT THEY HAVE THERE.

12   THIS WAS DUMPED ON US, BUT THEN THERE IS A REFERENCE IN THE

13   DISCOVERY RESPONSES TO THESE 21,000 PAGES OF BATES NUMBERS.

14         LOOKING THROUGH THAT, WE CAN'T FIND ANY RISK

15   MANAGEMENT SAFETY TEAM MINUTES ANYWHERE IN IT.  AND THAT WOULD

16   BE YOUR PRIMARY FRONT LINE, WHERE YOUR ACTUAL SCIENTISTS AT

17   MERCK START LOOKING AT THE CAUSAL EVIDENCE HERE.

18         WHAT ARE THEY EVALUATING?  WHAT ARE THEY DOING

19   CONCERNING THIS ISSUE?  WHAT SCIENTIFIC EVIDENCE IS BEING

20   PRESENTED IN FRONT OF THEM?

21         AND THAT KIND OF RAISES A LOT OF QUESTIONS TO US

22   ABOUT WHERE DID THIS COME FROM.  OUR BEST GUESS IS THAT THE

23   DOCUMENTS IN THOSE 21,000 PAGES ARE PULLED FROM SHAREPOINT, ONE

24   OF THEIR DOCUMENT SERVERS THAT KIND OF HAPHAZARDLY COLLECTS

25   DOCUMENTS ONE WAY OR THE OTHER.

1          BUT THE PROBLEM HERE IS NONE OF THAT HAS ANY RHYME OR

2     REASON TO IT.  AND WE HAVE NO ASSURANCE THAT IT'S ACTUALLY ALL

3     OF THE DOCUMENTS.  WE HAVE NO ASSURANCE THAT IT REFLECTS THE

4     KNOWLEDGE OF THE EMPLOYEES.  AND WE DON'T KNOW IF IT'S BEEN

5     CHERRYPICKED, WHAT'S IN THERE.

6          AND THAT IS WHY THERE ARE THREE DIFFERENT GROUPS OF

7     DOCUMENTS THAT SHOULD BE IN A PRODUCTION LIKE THAT, THAT WE

8     CAN'T FIND.  AND THEN WE THINK THAT THESE WOULD BE READILY

9     ACCESSIBLE.  IF YOU SIMPLY PRESENTED THIS TO MANY OF THE SAFETY

10    PEOPLE IDENTIFIED AS CUSTODIANS -- AND ANYONE ELSE WITH

11    KNOWLEDGE OF IT -- YOU'D GET THESE THREE GROUPS OF DOCUMENTS.

12         AND THIS, AGAIN, IS NOT ANYTHING THE DEFENDANTS HAVE

13    HELPED US WITH.  THIS IS WHAT, THROUGH OUR OWN COMBING BACK AND

14    FORTH, REALLY SHOULD JUMP OUT.  AND THE FIRST IS THE RISK

15    MANAGEMENT SAFETY TEAM MINUTES, THE FACT THAT THERE ARE NO

16    MINUTES FROM THE DOCUMENT RANGE THERE.  IT INDICATES TO US THAT

17    THEY'VE NEVER BEEN THERE.

18         THE SECOND ARE THE SIGNAL DETECTION REPORTS.

19         **THE COURT:**  I'M SORRY.  SAY THAT AGAIN?  THE WHAT?

20         **MR. KENNERLY:**  THE SIGNAL DETECTION REPORTS.

21         BASIC PHARMACOVIGILANCE, YOU LOOK FOR SAFETY SIGNALS

22    ROUTINELY.  WE CAN'T FIND ANYTHING FROM BEFORE 2012 IN THAT

23    PILE OF DOCUMENTS, OR REALLY SEARCHING ACROSS EVERYTHING.  THE

24    BIGGEST PICTURE ANALYSIS THAT GOES TO THE FDA IS THE POOLED

25    SAFETY ANALYSIS.  AND FROM WHAT'S ALREADY BEEN IN FRONT OF THE

SEPTEMBER 10, 2014

1    COURT IS THIS LAW REFERENCE TO HOW YOU HAVE TO DO A

2    COMPREHENSIVE VIEW OF SAFETY, YOU HAVE TO DO A POOL, YOU HAVE

3    TO DO AN AGGREGATE, ALL THOSE TYPES OF TERMS TO BRING

4    EVERYTHING TOGETHER.

5         WE HAVE THE POOLED SAFETY ANALYSIS THAT THEY PRESENT

6    TO THE FDA, BUT WE DON'T HAVE ANY OF THE STATISTICAL ANALYSIS

7    UNDERNEATH IT.

8         WE HAVE SUBSEQUENT CONCLUSIONS, BUT WHAT THE

9    EPIDEMIOLOGISTS THEMSELVES WOULD HAVE COME UP WITH, WHAT THEY

10   WOULD HAVE REVIEWED, ARE NOT THERE.  THAT PRESENTS ITS OWN

11   PROBLEM OF OUR EXPERTS ARE HOBBLED BY IT, NOWHERE TO EVEN START

12   TO LOOK INTO HOW MERCK HAS DEALT WITH ANY OF THIS, TO LOOK AT

13   HOW ANY OF THIS DATA HAS BEEN USED AT THE COMPANY.

14        AND WE ALREADY SEE PROBLEMS IN IT.  ONE OF THEM IS IN

15   THEIR STATISTICAL ANALYSIS, IT LOOKS LIKE THEY'VE POOLED

16   TOGETHER NEOPLASMS ACROSS ALL ORGANS, WHICH SCIENTIFICALLY WE

17   SEE NO REASON WHY YOU'D DO THAT.  YOU LOOK AT WHERE YOU MIGHT

18   BE DEVELOPING NEOPLASMS IN A PARTICULAR ORGAN.

19        WE'VE ALSO SEEN -- IT LOOKS LIKE THE POOLED SAFETY

20   ANALYSIS WAS BASED ON ALL OF THE PANCREATIC CANCER EVENTS IN 25

21   OF THE CLINICAL TRIALS.  THAT IS NOWHERE NEAR THE AMOUNT THAT

22   SHOULD BE IN THERE.  I MEAN, IN THEORY YOU COULD PUT IT WITH

23   OVER A HUNDRED CLINICAL TRIALS, BUT AT LEAST 40 OR MORE OF

24   THOSE TRIALS HAVE SUFFICIENT DATA THAT IT SHOULD GO INTO A

25   POOLED SAFETY ANALYSIS.

SEPTEMBER 10, 2014

1          AND AGAIN, IT'S NOT A MATTER THE DEFENDANTS NEED TO

2     EXPLAIN IN DETAIL OFF OF THIS.  THEY WOULD HAVE THIS.  IF YOU

3     ASKED AN EPIDEMIOLOGIST AT MERCK WHERE'S THE STATISTICAL REPORT

4     FOR THE POOLED SAFETY ANALYSIS, THEY'D PROBABLY BE ABLE TO PULL

5     IT RIGHT OFF THE SHELF.  SO IT IS ABOUT MISSING DISCOVERY.  WE

6     DON'T KNOW WHAT CAUSAL DOCUMENTS WE HAVE.  IT LOOKS LIKE WE

7     HAVE A HAPHAZARD FILM FROM THEIR SHAREPOINT, BUT IT DOESN'T

8     MEAN THAT MERCK HAS EVER SAT DOWN, ASKED THE RELEVANT PEOPLE:

9     WHAT DO YOU KNOW ABOUT THE CAUSAL ANALYSIS IN GIVING US THE

10    MINUTES, THE SIGNAL DETECTION REPORTS, AND THE ANALYSES

11    UNDERLYING THE POOLED SAFETY ANALYSIS?

12          MOVING TO THE THIRD TOPIC, IN ITS RESPONSE, MERCK

13    REFERENCES -- I THINK ON PAGE FOUR -- THAT THEY GAVE A TARGET

14    RESPONSE ABOUT FDA INFORMATION.  AND I SENT DEFENSE COUNSEL AN

15    E-MAIL RIGHT AFTER THEY FILED IT.  AND THEY PROMPTLY GOT BACK

16    TO ME AND SAID THEY WERE TALKING ABOUT INTERROGATORY 34, WHICH

17    IS NOT PART OF THIS.

18          AND THAT KIND OF GIVES US A TEMPLATE AS REALLY WHAT

19    WE'RE LOOKING FOR.  BECAUSE IN RESPONSE TO INTERROGATORY 34,

20    WHICH ASKS ABOUT COMMUNICATIONS WITH THE FDA RELATING TO THE

21    2014 ANALYSIS, MERCK'S RESPONSE WAS WE WENT, WE TALKED WITH OUR

22    CUSTODIAN, WE TALKED WITH LOU ANN EADER.

23          LOU ANN EADER WAS ABLE TO PROVIDE TO US AN E-MAIL THE

24    FDA SENT HER IN AUGUST, AND A RESPONSE THAT MERCK SENT BACK IN

25    NOVEMBER.  THAT'S WHAT WE'RE ASKING FOR:  LET'S JUST TALK TO

1  PEOPLE AND GET A RESPONSE BACK TO US.

2           BUT THAT KIND OF WEIGHS IN IN ITS OWN GLOBAL ISSUE AS

3  TO WHY THIS IS ALL SO IMPORTANT, THAT MERCK TALK TO ITS

4  EMPLOYEES AND GIVE US INFORMATION BACK.  THAT IS VERY

5  PERTINENT, THAT COMMUNICATION BACK AND FORTH.

6           AND ON SPREADSHEETS THAT MERCK PROVIDES TO THE FDA,

7  TALKING ABOUT SOME OF THEIR CLINICAL TRIALS IN PANCREATIC

8  CANCER, VERY CRITICAL INFORMATION.  THIS HAPPENS BACK IN AUGUST

9  AND NOVEMBER.  MERCK DOES NOT IDENTIFY THIS COMMUNICATION WITH

10 THE FDA RIGHT IN THE SUBJECT OF THIS ENTIRE LITIGATION UNTIL

11 JUNE 30TH.  THAT IS THE FIRST RESPONSE THAT EVER REFERENCES

12 ANYTHING BACK AND FORTH OF THIS.

13          SO WE FOUND THIS BECAUSE WE GET THE DOCUMENTS THAT

14 SHOWS THIS IN APRIL 2014.  AND AGAIN, THERE IS A SIX-MONTH

15 DELAY FROM WHEN MERCK HAD THIS IN THEIR HAND, DIRECTLY RELEVANT

16 TO EVERYTHING, TO WHEN THEY PHYSICALLY PRODUCED IT TO US.

17          THEY DON'T PRODUCE IT TO US AND SAY LOOK AT THIS

18 DOCUMENT BACK AND FORTH TO THE FDA.  THEY DUMP IT IN THE MIDDLE

19 OF AN ESI REQUEST GOING THROUGH THE IND AND THE NDA.  AND FOR

20 WHATEVER REASON, IT'S ONLY IN THE NDA FOR JANUMET.  IT'S NOT

21 EVEN IN THE JANUVIA NDA.

22          WE FOUND THIS ON OUR OWN, DOING THESE FISHING

23 SEARCHES ACROSS EVERYTHING.  WHEN IF YOU JUST ASK LOU ANN

24 EADER:  HAVE YOU BEEN TALKING WITH THE FDA ABOUT PANCREATIC

25 CANCER, SHE WOULD HAVE SAID THIS IMMEDIATELY.

1       AND SHE DID, WHENEVER IT WAS THAT MERCK TALKED TO

2   HER, BUT WE DON'T HEAR THIS UNTIL JUNE 30TH.  SO THIS IS WHAT

3   WE WANT.  WE'D LIKE IT A LITTLE BIT FASTER.  WE'D LIKE IT A

4   LITTLE BIT MORE THOROUGH, BUT THEY JUST NEED TO TALK WITH THE

5   CUSTODIANS AND SEE WHAT THE CUSTODIANS TELL US, OR ANY OTHER

6   KNOWLEDGEABLE EMPLOYEE, AND RECORD IT TO US.

7       **THE COURT:**  WOULD YOU TELL ME, IS IT LOU ANN EADER?

8   COULD YOU SPELL THAT?

9       **MR. KENNERLY:**  EADER, E-A-D-E-R.

10      **THE COURT:**  OKAY.  GO AHEAD.

11      **MR. KENNERLY:**  THE FOURTH ISSUE RELATES TO RAW DATA.

12  AT THIS ISN'T A MOTION ABOUT RAW DATA, BUT IT REFLECTS WHY WE

13  NEED SOME GUIDANCE FROM THE COURT ON HOW MUCH THE COMPANY NEEDS

14  TO TELL US.

15      THE PRIMARY DISCOVERY THEY HAVE GIVEN US ARE THESE

16  LARGE SPREADSHEETS THAT REFLECT CLINICAL TRIALS AND NONCLINICAL

17  TRIALS AND NONCLINICAL STUDIES THAT WERE DONE RELATING TO THESE

18  DRUGS.  WE DON'T HAVE THE RAW DATA OFF OF THEM.  WE WERE GIVEN

19  THE OPTION TO START REQUESTING THE RAW DATA. WE'VE BEEN

20  MEETING AND CONFERRING ON THAT FOR SOME TIME.  AND, ACTUALLY,

21  WITH REGARD TO MERCK, WE ARE GOING TO HAVE A REQUEST FOR THEM

22  EITHER TODAY OR TOMORROW.

23      THE PROBLEM WITH THAT IS THAT'S ITS OWN VERY ARDUOUS

24  PROCESS.  THE SPREADSHEETS DO NOT POINT US TO WHAT HAS

25  PANCREATIC CANCER DATA.  THEY DO NOT POINT US TO WHERE THEY'VE

SEPTEMBER 10, 2014

1    SEEN PANCREATIC CANCER EVENTS.

2             SO WE HAVE TO COMB THROUGH THESE AS BEST WE CAN.  WE

3    HAVE TO DIG OUT THE PROTOCOLS, WE HAVE TO TALK WITH THEIR

4    EXPERTS, AND THEN GO BACK AND FORTH TO MERCK AND SAY, OKAY,

5    WELL MAYBE THERE IS RAW DATA IN THIS ONE, MAYBE THERE IS RAW

6    DATA IN THAT ONE.

7             IF WE HAD THESE SORTS OF ANALYSES THEY THEMSELVES

8    HAVE BEEN PERFORMING, THIS WOULD BE MUCH SIMPLER.  AND WHAT

9    WE'RE GOING TO RUN INTO AT THESE DEPOSITIONS IS THE FIRST ROUND

10   OF THE DEPOSITION IS GOING TO BE A BASIC, WELL, WE HAVE TO FIND

11   THESE DOCUMENTS, DO YOU RECALL THE DOCUMENTS, DO YOU KNOW OF

12   ANY DOCUMENTS.

13            IT SHOULDN'T BE THAT WAY.  WE SHOULD HAVE IT

14   STREAMLINED.  THE CORPORATION SHOULD HAVE RESPONDED BEFORE AND

15   TOLD US THESE THINGS THAT IT KNOWS OF.  NOT EVERY DOCUMENT, BUT

16   EVERY DOCUMENT IT KNOWS OF, THAT THEY NEED TO KNOW OF, AND THEN

17   WE CAN GET TO THE SUBSTANCE OF THIS CASE.

18            THE LAST ISSUE -- I DON'T KNOW IF THE COURT EVEN

19   WANTS TO GO INTO IT -- IS ABOUT WHAT OCCURS AT THE MEET AND

20   CONFERS.

21            **THE COURT:**  NO, I DON'T.  I DON'T WANT TO HEAR ABOUT

22   THE LAWYER-BASHING ARGUMENTS BACK AND FORTH.  I MADE THAT

23   CLEAR.  THIS IS SUPPOSED TO BE A SIMPLIFIED PROCEDURE AND,

24   FRANKLY, I'M GIVING A SERIOUS THOUGHT OF JUST SENDING YOU BACK

25   TO JUDGE DEMBIN AND LETTING HIM DEAL WITH THIS BECAUSE I ASKED

1    FOR A BRIEF SUMMARY THAT YOU DID MEET AND CONFER.  WHAT I GET

2    IS FOUR PAGES OF WHAT EVERYBODY IS DOING TO EVERYBODY ELSE.  I

3    REALLY WANT TO MOVE THIS CASE ALONG.  AND I DON'T KNOW WHAT

4    DISTRICTS YOU ALL PRACTICE IN, BUT THIS IS THE SIXTH BUSIEST

5    DISTRICT IN THE UNITED STATES.  IT IS HIGHLY UNUSUAL FOR A

6    DISTRICT JUDGE TO GET INVOLVED IN DISCOVERY, AND I'M STARTING

7    TO REGRET THAT I SAID I WOULD DO IT.

8            YOU GUYS NEED TO GET TO THE POINT AND GET MOVING OR

9    I'LL SEND YOU BACK TO JUDGE DEMBIN, AND HE CAN SPEND HIS TIME

10   WITH YOU.  HE HAS MORE TIME THAN I DO, FRANKLY.  SO DON'T GIVE

11   ME THE MISDEEDS OF COUNSEL.  IT'S JUST NOT GOING TO GO

12   ANYWHERE.  IT'S NOT FLATTERING TO ANY OF YOU TO KEEP GOING BACK

13   TO WELL, THEY'RE HIDING STUFF, THEY'RE BEING EVASIVE, AND

14   THEY'RE DELAYING IN THEIR APPROACH AND OBFUSCATING ALL OF THIS.

15           JUST GET OVER IT.  LET'S GET DOWN TO WHAT IT IS YOU

16   WANT, WHY IT'S RELEVANT, AND THEN I WILL FASHION A RELIEF.  IF

17   YOU WANT TO PLAY THE GAME OF LAWYER-BASHING, YOU CAN GO SEE

18   JUDGE DEMBIN.  SO THAT'S MY INSIGHT ON THAT CATEGORY.  SO THAT

19   ONE WE'RE NOT GOING TO GO FURTHER WITH.

20           IS THERE ANYTHING ELSE ON THE PLAINTIFFS' SIDE ON

21   THAT NOTE?

22           **MR. KENNERLY:**  NO, THERE IS NOT, YOUR HONOR.  THAT IS

23   IT FROM THE PLAINTIFF.

24           **THE COURT:**  WELL, WE'RE PICKING ON MERCK, IT SOUNDS

25   LIKE, SO, MS. REYES, MAYBE I SHOULD TURN TO YOU FIRST.

SEPTEMBER 10, 2014

1        **MS. REYES:** YES, YOUR HONOR.  GOOD MORNING.  THANK

2   YOU.  I AM ACTUALLY GOING TO SPEAK ON BEHALF OF ALL DEFENDANTS

3   TODAY, UNLESS THEY HAVE OTHER THINGS TO ADD AFTER I'M FINISHED,

4   IF THAT'S OKAY WITH YOU.

5        **THE COURT:** OKAY.  SURE.

6        **MS. REYES:** I'M GOING TO TAKE UP THE POINT THAT WAS

7   JUST ARTICULATED IN TURN.  FIRST OF ALL, WITH RESPECT TO WHAT

8   PLAINTIFFS WANT DEFENDANTS TO DO, I THINK THE ISSUE HERE IS

9   THAT PLAINTIFFS ARE CONFUSING THREE DIFFERENT TYPES OF

10  DISCOVERY.  THERE ARE DOCUMENT REQUESTS, THERE ARE

11  INTERROGATORIES, AND THERE ARE DEPOSITIONS.  AND THERE ARE

12  DIFFERENT REQUIREMENTS FOR EACH TYPE OF DISCOVERY REQUEST.

13       WITH RESPECT TO THE DOCUMENT REQUESTS, THEY HAVE NOT

14  IDENTIFIED CATEGORIES OF DOCUMENTS THAT ARE MISSING.  TO THE

15  EXTENT THAT THEY SAY THAT WE HAVE TO GO TO OUR EMPLOYEES AND

16  ASK THEM WHERE INFORMATION IS, THAT IS THE RESPONSE FOR

17  INTERROGATORY REQUESTS.  SO THE QUESTION IS:  DO THEY HAVE

18  APPROPRIATE INTERROGATORY REQUESTS TO THE DEFENDANTS THAT WOULD

19  REQUIRE DEFENDANTS TO GO DO THAT?  AND THEY DO NOT.

20       THEY HAVE IDENTIFIED TWO DOCUMENT REQUESTS TO YOU --

21  TWO INTERROGATORIES TO YOU.  NUMBER 25, WHICH THE DEFENDANTS

22  ANSWERED; AND NUMBER 26, WHICH IS BASICALLY ASKING FOR ALL ORAL

23  AND WRITTEN COMMUNICATIONS WITH RESPECT TO WHETHER THE DRUG

24  CAUSED PANCREATIC CANCER.  THAT IS ONE INTERROGATORY.  IT

25  COVERS YEARS' WORTH OF COMMUNICATIONS.  IT COVERED POTENTIALLY

1   THOUSANDS OF COMMUNICATIONS, IF NOT MORE.  WE WOULD HAVE TO ASK

2   HUNDREDS OF EMPLOYEES IN ORDER TO ANSWER THAT INTERROGATORY.

3   THAT IS THE TYPE OF INTERROGATORY THAT HAS REPEATEDLY BEEN HELD

4   TO BE INAPPROPRIATE AND NOT ENFORCED BY COURTS.

5            WITH RESPECT TO THE DOCUMENT REQUESTS, WE HAVE

6   PRODUCED TO THEM DOCUMENTS THAT ARE KEPT IN THE ORDINARY COURSE

7   OF BUSINESS.  COURTS HAVE MADE CLEAR THAT IN THIS ERA OF

8   ELECTRONIC DISCOVERY, DOCUMENTS ARE PRODUCED AS THEY ARE KEPT

9   IN THE ORDINARY COURSE OF BUSINESS IF THEY ARE PRODUCED WITH

10  APPROPRIATE IDENTIFYING INFORMATION.  WE HAVE DONE THAT.

11           THE DEFENDANTS HAVE FOLLOWED THE ESI PROTOCOL ENTERED

12  INTO BY JUDGE DEMBIN TO THE T.  AND THERE IS NO ARGUMENT BY

13  PLAINTIFFS THAT WE HAVE NOT.

14           THEY HAVE INDICES OF OUR CUSTODIANS OF THE TO, FROM,

15  CC, FILE PATH, ETC.  THOSE DOCUMENTS ARE FULLY SEARCHABLE BY

16  THE PLAINTIFFS.  BECAUSE WE HAVE PRODUCED THEM IN THAT MANNER

17  AS THEY ARE KEPT IN THE ORDINARY COURSE OF BUSINESS, RULE 34

18  DOES NOT REQUIRE US TO DO WHAT PLAINTIFFS NOW DEMAND, THAT WE

19  IDENTIFY SPECIFIC DOCUMENTS WITH RESPECT TO SPECIFIC REQUESTS.

20           AND TO THE EXTENT THAT PLAINTIFFS WANT MORE

21  INFORMATION FROM EMPLOYEES, THEY ARE GOING TO GET DEPOSITIONS

22  OF THE EMPLOYEES AND THEY CAN ASK THE QUESTIONS DURING THOSE

23  DEPOSITIONS.

24           WITH RESPECT TO MISSING DOCUMENTS AND THE RISK/SAFETY

25  ANALYSIS OR IN THE COMMITTEE MEETINGS, WE HAVE PRODUCED TO THEM

1    THE MEETINGS FROM THE -- THE DOCUMENTS FROM OUR SHAREPOINT

2    SITE.  THIS IS WHERE WE WERE TOLD THE DOCUMENTS WOULD BE

3    HOUSED.  WE COLLECTED FROM THERE AND WE GAVE THEM TO

4    PLAINTIFFS.  AND PLAINTIFFS DON'T HAVE TO SPECULATE THAT THAT

5    IS WHERE WE WENT; WE TOLD PLAINTIFFS PRECISELY THAT THAT'S

6    WHERE WE WENT.

7              BUT WE DID NOT ONLY DO THAT.  WE ALSO PRODUCED FROM

8    CUSTODIANS, WHO ARE MEMBERS OF THOSE COMMITTEES, TO ALSO HAVE

9    THEIR CUSTODIAL FILES, WITH ANY OTHER DOCUMENTS THAT MIGHT BE

10   INVOLVED.

11             WITH RESPECT TO THE MINUTES, THE COMMITTEES WORKED BY

12   AGENDA AT MERCK.  SO WHAT THEY DO HAVE ARE AGENDAS OF THOSE

13   COMMITTEES.  AND I'M SURE PLAINTIFFS HAVE REVIEWED THOSE

14   AGENDAS.

15             WITH RESPECT TO THE POOLED SAFETY ANALYSIS, THIS IS

16   THE FIRST I'M HEARING ABOUT ANY ISSUE WITH THIS.  AND I WILL

17   SAY THE FOLLOWING:  THAT THIS IS A GOOD EXAMPLE OF THE FACT

18   THAT WHEN PLAINTIFFS RAISE SPECIFIC ISSUES, WE HAVE GONE BACK

19   AND WE HAVE TRIED TO BE VERY DILIGENT IN GOING BACK AND FINDING

20   FOR THEM THE CATEGORIES OF DOCUMENTS THAT THEY WANT.

21             WHAT I DO KNOW IS THAT THOSE POOLED ANALYSES WOULD BE

22   PART OF RAW DATA THAT WE ARE SEPARATELY MEETING AND CONFERRING

23   WITH.  THE PLAINTIFFS HAVE NOT ASKED TO MEET AND CONFER ON

24   THOSE ISSUES UNTIL THE LAST COUPLE OF WEEKS.  WE HAVE BEEN VERY

25   RESPONSIVE.  WE HAVE MET AND CONFERRED WHEN THEY WANTED TO.  WE

1   HAVE AGREED TO PRODUCE DATA TO THEM AND MAKE IT AVAILABLE FOR

2   INSPECTION, AND WE ARE WORKING THROUGH WITH OTHER PLAINTIFF

3   COUNSEL TO MAKE THAT HAPPEN.

4        AND THEN FINALLY, WITH RESPECT TO THE ISSUE WITH

5   RESPECT TO THE SPREADSHEET, AND THEY CLAIM NOW THAT WE HAVEN'T

6   IDENTIFIED FOR THEM WHICH STUDIES RELATE TO PANCREATIC CANCER.

7   THE FIRST I RECEIVED THAT REQUEST WAS TWO WEEKS AGO, ON A MEET

8   AND CONFER WITH RESPECT TO THE RAW DATA.  IT WAS A MEET AND

9   CONFER I HAD WITH DIFFERENT PLAINTIFF COUNSEL.  THEY ASKED FOR

10  THAT.  WE'LL AGREE TO PROVIDE THAT FOR THEM.  WE'LL AGREE TO

11  PROVIDE FOR THEM STUDIES IN WHICH THERE WERE ADVERSE EVENT

12  REPORTS OF PANCREATIC CANCER EVENTS.

13       WE DON'T THINK THAT THAT IS A PROPER STATISTICAL

14  ANALYSIS TO DO BECAUSE YOU HAVE TO DO THE STATISTICAL ANALYSIS

15  ACROSS ALL STUDIES, NOT JUST THOSE IN WHICH PANCREATIC CANCER

16  EVENTS OCCURRED.  BUT I DO THINK THIS IS ANOTHER INSTANCE IN

17  WHICH WHEN THE PLAINTIFFS ASK US FOR SPECIFIC TYPES OF

18  DOCUMENTS, WE TRY TO BE RESPONSIVE.  AND THERE ARE A NUMBER OF

19  ISSUES THAT HAVE BEEN RAISED FOR THE FIRST TIME ON THIS CALL

20  THAT ARE PART OF SEPARATE MEET AND CONFERS THAT ARE ONGOING AT

21  THIS TIME.

22       SO I THINK WITH RESPECT TO WHAT THE DECISION IS FOR

23  THE COURT, SO FAR AS I UNDERSTAND IT, IS, ONE, ARE DEFENDANTS

24  OBLIGATED, IN RESPECT TO THEIR DOCUMENT REQUESTS, TO IDENTIFY

25  WHICH DOCUMENT GOES WITH WHICH REQUEST?  AND THE ANSWER IS NO,

1  BECAUSE RULE 34 PERMITS DEFENDANTS TO PRODUCE THE DOCUMENTS IF

2  THEY ARE KEPT IN THE ORDINARY COURSE OF BUSINESS.

3          WITH RESPECT TO THE TWO INTERROGATORIES AT ISSUE, 25

4  AND 26, THEY HAVE NOT IDENTIFIED ANY ISSUES WITH 25 IN THEIR

5  MOTION PROFFER, AND ON THAT BASIS IT SHOULD BE DENIED.

6          WITH RESPECT TO 26, THAT IT'S JUST TOO BROAD, ASKING

7  FOR ALL WRITTEN AND ORAL COMMUNICATIONS.

8          **THE COURT:**  WHY WEREN'T THE SPREADSHEETS PART OF THE

9  INITIAL PRODUCTION WITH REGARD TO THE INFORMATION RELATED TO

10  CAUSE?  I UNDERSTAND YOU'RE NOW GOING TO PRODUCE THEM, BUT WHY

11  WEREN'T THEY THERE IN THE FIRST INSTANCE?

12          **MS. REYES:**  WE PRODUCED THE SPREADSHEETS IN THE FIRST

13  INSTANCE, YOUR HONOR.  WE CREATED THE SPREADSHEETS FOR THE

14  PLAINTIFFS AS PART OF THE INITIAL INTERROGATORY RESPONSES.

15  THEY'VE HAD THOSE SPREADSHEETS FOR MONTHS.  THEY'VE NEVER

16  IDENTIFIED UNTIL THE LAST TWO WEEKS THAT THEY WANTED MORE

17  SPECIFIC INFORMATION THAN WHAT WAS PROVIDED.  AND AS SOON AS

18  THEY IDENTIFIED IT FOR US, WE AGREED TO TRY TO GO BACK AND DO

19  THAT.

20          **THE COURT:**  SO NOW YOU WILL BE PRODUCING THE RAW DATA

21  UNDER THE SPREADSHEETS, RIGHT?  I'M SORRY.  I DIDN'T MEAN TO

22  CUT YOU OFF.

23          **MS. REYES:**  THERE IS AN IMMENSE AMOUNT OF RAW DATA.

24  WHAT WE'RE TRYING TO WORK THROUGH WITH PLAINTIFF IS DO THEY

25  WANT THE RAW DATA FOR EVERY STUDY, IN WHICH CASE THAT WOULD BE

1    AN IMMENSE AMOUNT AND THEY WOULD HAVE TO INSPECT IT AT THE

2    DEFENDANTS' HEADQUARTERS.  OR ARE THERE SPECIFIC STUDIES FOR

3    WHICH THEY WANT RAW DATA, IN WHICH CASE WE'LL PRODUCE THAT

4    SPECIFIC RAW DATA.  BUT WE HAVE HAD THAT OFFER ON THE TABLE

5    SINCE MAY, YOUR HONOR.

6           THE COURT:  OKAY.  THAT MAY BE, BUT THE QUESTION YOU

7    HAVE ANSWERED IS THAT YOU'RE WORKING WITH PLAINTIFFS ON THAT.

8           AND I DON'T KNOW THAT WE HAVE COVERED SPECIFICALLY

9    THE STATISTICAL ANALYSIS REPORTS, THEIR APPARENT LACK OF

10   EXISTENCE, FROM THE PLAINTIFFS' VIEW OF THE DATA.  ARE THEY IN

11   THIS SHAREPOINT MATERIAL THAT HAS BEEN PROVIDED, THE

12   STATISTICAL ANALYSIS REPORTS THAT WOULD HAVE BEEN THE

13   UNDERLYING -- OR I GUESS THE WORK PRODUCT OF THE POOLED SAFETY

14   ANALYSIS?

15          MS. REYES:  YOUR HONOR, THIS IS THE FIRST TIME

16   HEARING ABOUT IT.  BUT I CAN SAY THE FOLLOWING:  THEY WILL NOT

17   BE IN THE SHAREPOINT SITE.  I UNDERSTAND THAT THEY WILL BE IN

18   THE RAW DATA ANALYSIS.  AND CERTAINLY, TO THE EXTENT THAT THEY

19   THINK THEY ARE MISSING INFORMATION, I WILL TRY TO TRACK THAT

20   DOWN FOR THEM.

21          THE COURT:  OKAY.  ALL RIGHT.  AND THEN FORGIVE ME

22   BUT THERE WAS A POINT THREE ABOUT YOUR PAGE FOUR RESPONSE AND

23   LOU ANN EADER.  AND THAT IS PART OF THIS RAW DATA UNDER THE

24   SPREADSHEET DISCUSSION, AS WELL, AS FAR AS YOU UNDERSTAND IT,

25   MS. REYES?

1             **MS. REYES:**  WELL, I'M NOT SURE WHAT THE CONCERN IS.

2    BASICALLY, THEY ARE SAYING THERE IS AN INTERROGATORY AND MERCK

3    RESPONDED TO IT.  AND THAT'S WHAT WE DID.  AND THIS IDEA THAT

4    THEY DIDN'T HAVE THIS UNTIL JUNE I DON'T THINK IS CORRECT.  WE

5    PRODUCED DOCUMENTS AS THE COURT ORDERED THEM.  WE PRODUCED

6    INTERROGATORY RESPONSES IN MAY.  WE MET AND CONFERRED WITH

7    PLAINTIFF ON SOME OF THEM.  WE REVISED SOME OF THEM.  AND THEN

8    WE PRODUCED DOCUMENTS THAT WE WERE ORDERED TO, MEETING ALL THE

9    DEADLINES.

10            **THE COURT:**  OKAY.  AND MY ASSUMPTION IS THAT UNDER

11   RULE 26(G), ALL OF THE INTERROGATORY RESPONSES OR DOCUMENT

12   REQUESTS WERE VERIFIED OR SIGNED OFF ON BY COUNSEL OR THE PARTY

13   AS TO THE REASONABLE INQUIRY AND THE COMPLETENESS.  IS THAT

14   TRUE AS FAR AS MERCK IS CONCERNED?

15            **MS. REYES:**  YES.  CERTAINLY, YOUR HONOR.

16            **THE COURT:**  AND LILLY, AS WELL?

17            **MR. KING:**  YES, YOUR HONOR.

18            **THE COURT:**  AND NOVO NORDISK, TRUE FOR THEM?

19            **MS. LEVINE:**  NOVO NORDISK.  YES, YOUR HONOR.

20            **THE COURT:**  AND AMYLIN?

21            **MS. LAURENDEAU:**  YES, YOUR HONOR.

22            **THE COURT:**  OKAY.  ALL RIGHT.  ANY OF THE OTHER

23   DEFENSE COUNSEL WANT TO SAY ANYTHING TO SUPPLEMENT WHAT

24   MS. REYES HAS ADVISED?

25            IF NOT, PLAINTIFF, ANY FINAL WORD?  MR. KENNERLY, OR

1   OTHERS ON THIS?

2            **MR. KENNERLY:**  YES, YOUR HONOR.

3            **THE COURT:**  GO AHEAD.

4            **MR. KENNERLY:**  THIS IS MR. KENNERLY, AGAIN.  JUST A

5   FEW POINTS TO COVER.  ONE OF THEM IS ABOUT SPREADSHEETS.  THERE

6   IS MULTIPLE SPREADSHEETS TO TALK ABOUT HERE.  THE ONE THAT

7   DEFENSE COUNSEL IS REFERENCING, THAT THEY GAVE US SOME TIME

8   AGO, IS THE SPREADSHEET OF STUDIES CONDUCTED ON THE DRUGS.  AND

9   THAT'S THE ONE WHERE WE ARE CONTINUING TO MEET AND CONFER, THE

10  RAW DATA WE WANT FROM WHICH STUDIES.

11           NOW, WE HAVE REQUESTED ALL.  THEY SAID NO.  WE HAD A

12  MEET AND CONFER BACK AND FORTH.  WE'VE HAD OUR EXPERTS LOOKING

13  AT WHICH ONES THEY WANT.  SO THAT IS STILL PART OF THE MEET AND

14  CONFER.

15           BUT THERE ARE DIFFERENT SPREADSHEETS THAT HAVE BEEN

16  DISCUSSED HERE.  AND THIS ISN'T THE MOTION FOR IT, BUT I DON'T

17  WANT TO HAVE THE COURT HAVE A MISUNDERSTANDING OF IT.  SOME OF

18  WHAT WE REQUESTED IS IDENTIFIABLE PANCREATIC CANCER CASES IN

19  YOUR CLINICAL TRIALS.  THE DEFENDANTS HAVE ALL SAID THEY WILL

20  ABSOLUTELY NOT DO THAT.

21           WE HAVE FOUND, THROUGH SOME FISHING THROUGH THESE

22  DOCUMENTS, SOME BARING OF THIS.  THEY ARE NEVER IN THE ORIGINAL

23  NATIVE FORMAT THEY WERE STORED IN.  THEY USUALLY HAVE SCANS OF

24  IT.  BUT WE DON'T HAVE THAT AT ALL.  AND THE DEFENDANTS HAVE

25  OBJECTED TO GIVING US ANYTHING LIKE THAT.  THEY HAVE OBJECTED

1  TO GIVING US ANY SPREADSHEET ABOUT ADVERSE EVENTS, EITHER.

2  THAT IS THE SUBJECT OF OUR MOTION.  SO I DON'T WANT THE COURT

3  TO MISUNDERSTAND WHICH SPREADSHEETS ARE DISCUSSED.  THERE ARE

4  MULTIPLE ONES OUT THERE BEING DISCUSSED BACK AND FORTH.

5      **THE COURT:**  RIGHT.  I WAS FOCUSING -- AND I

6  APPRECIATE YOUR COMMENTS.  WE'RE FOCUSING ON THE ONES THAT ARE

7  RESPONSIVE TO THE INTERROGATORIES OR DOCUMENT REQUESTS THAT ARE

8  THE SUBJECT OF THE MOTION.  THERE MAY WELL BE OTHERS, AND I

9  ACKNOWLEDGE THAT.

10      ANYTHING ELSE, THEN?

11      **MR. KENNERLY:**  YES, VERY BRIEFLY.  THE POOLED

12  ANALYSIS EVALUATIONS -- AND I'M A LITTLE LOST ON HOW AN

13  EVALUATION OF STATISTICAL DATA COULD BE RAW DATA, BUT THIS IS A

14  BIGGER GLOBAL POINT HERE.  WHICH IS, YOU KNOW, THESE ARE THINGS

15  THAT WHEN WE DIVED THROUGH, BACK AND FORTH, WE WERE ABLE TO

16  LOCATE AND THEN HAD AN ISSUE WITH IT.  WHEREAS IF YOU PRESENTED

17  THESE QUESTIONS -- HAVEN'T YOU BEEN ANALYZING A CAUSAL LINK --

18  YOUR SCIENTIST AT MERCK WILL COME BACK AND SAY, WELL, HERE IS

19  THE POOLED SAFETY ANALYSIS, HERE IS THE EVALUATION OF THE

20  STATISTICAL DATA.  AND THE RESPONSE THE DEFENDANTS GAVE IS

21  REALLY THE SUM TOTAL OF THIS MOTION.

22      THE RESPONSE THAT THE DEFENDANTS GAVE IS WELL, WE DID

23  ESI SEARCHES ON CUSTODIANS, AND WE PULLED SOME STUFF FROM

24  SHAREPOINT.  AND PLAINTIFFS' POSITION IS THAT'S OKAY FOR ESI.

25  IT'S NOT OKAY FOR INTERROGATORIES AND REQUESTS FOR DOCUMENTS.

1  INTERROGATORIES AND REQUESTS FOR DOCUMENTS REQUIRE YOU GO AND

2  SPEAK WITH THE AGENT, YOU LOOK AT THE AGENT'S KNOWLEDGE.  THAT

3  IS THE REASONABLE INVESTIGATION.  THE IDEA THAT THIS IS

4  HUNDREDS OF EMPLOYEES WHO WOULD BE ASSESSING THE CAUSAL LINK

5  BETWEEN JANUVIA AND PANCREATIC CANCER -- IT'S NOT.  IT'S GOING

6  TO BE, AT MOST, A DOZEN, MAYBE 20 OF THEM.  SIMPLY ASK THEM:

7  WHAT CRITERIA DO YOU USE, WHAT DOCUMENTS DO HAVE REFLECTING IT?

8         AND AGAIN, WE DON'T HAVE ANY OF THAT.  OR IF WE DO

9  HAVE IT, WE HAVE IT BURIED SOMEWHERE.  WHEREAS IF I WALKED INTO

10  MERCK'S OFFICE AND SAID HOW HAVE YOU BEEN ANALYZING THE

11  EPIDEMIOLOGY, SOMEONE COULD TAKE ME RIGHT TO THESE DOCUMENTS.

12  THEY COULD TAKE ME RIGHT TO THESE AGENDA NOTES OR MINUTES.  WE

13  CAN'T FIND EITHER OF THOSE.  THEY COULD TAKE ME RIGHT TO THE

14  STATISTICAL ANALYSES.  AND THAT WOULD BE THAT.

15         SO THAT IS WHAT WE'RE ASKING.  AND THIS IS WHY WE'RE

16  HOPING TO GET DIRECTION FOR THE FUTURE.  THE DEFENDANTS'

17  POSITION IS THE CUSTODIAL SEARCH IS GOOD ENOUGH.  RUN THE ESI

18  PROTOCOL AND YOU'RE DONE.  OUR VIEW IS YOU STILL NEED TO GO

19  TALK TO THE EMPLOYEES, RELATE BACK WHAT THEY SAID, IDENTIFY THE

20  DOCUMENTS THEY IDENTIFIED AS RESPONSES.

21         **THE COURT:**  SO IT SOUNDS LIKE WHAT YOU'RE SAYING IS

22  YOU WANT DETAILS AS TO WHAT THEY DID IN ORDER TO RESPOND TO THE

23  INTERROGATORIES -- WHO THEY SPOKE TO AND SO FORTH, WHAT FILES

24  THEY SEARCHED OR DIDN'T SEARCH?

25         **MR. KENNERLY:**  THAT WOULD BE PART OF IT.  IF THEY'RE

1   RESPONDING TO REQUESTS FOR DOCUMENTS WITH SOME DOCUMENTS, WELL,

2   WHERE DID THESE COME FROM?  IS IT THE ESI SEARCH, IS IT THE

3   SHAREPOINT?  BUT AN ADDITIONAL ISSUE IS DID SOMEONE IDENTIFY

4   THIS AS RELEVANT?  WHO DID YOU TALK TO?

5          AND THE ANSWERS THAT WE GOT BACK DON'T INDICATE

6   ANYONE WAS TALKED TO.  THEY OBJECT:  LOOK, WE'VE GIVEN YOU THE

7   ESI SEARCHES AND THE CUSTODIAN FILES AND THAT'S IT.  FULL STOP.

8          SO THE FIRST TIME WE'RE GONNA KNOW WHAT, FOR EXAMPLE,

9   LOU ANN EADER -- WHAT COMMUNICATIONS SHE KNOWS OF, THIS IS

10  GOING TO BE DURING HER DEPOSITION.  AND AS TO THE

11  EPIDEMIOLOGIST AT MERCK, THE FIRST TIME WE'RE GOING TO ASK THEM

12  WHAT ANALYSES HAVE YOU PERFORMED, THE FIRST TIME WE'LL HAVE AN

13  ANSWER IS WHEN IT'S DURING THEIR DEPOSITION.  AND THIS IS

14  READILY AVAILABLE TO THE COMPANY, JUST TO ASK THEIR EMPLOYEES

15  WHAT HAVE YOU DONE, AND THEY CAN POINT TO IT.

16          **THE COURT:**  AND I UNDERSTAND THAT.  BUT I THINK

17  INTERROGATORY 26 IS WAY OVERBROAD IN ITS APPROACH TO THE ANY

18  AND ALL, CONTRARY TO SOME OF THE DOCUMENT REQUESTS THAT DO GET

19  MORE SPECIFIC TO CAUSALLY-RELATED DOCUMENTS AND SO FORTH.

20          BUT YOU ARE ASKING FOR A WIDE UNIVERSE THAT COULD --

21  I THINK SOMEBODY DESCRIBED -- INCLUDE POST-ITS AND OTHER

22  THINGS.  AND THE FOCUS OF THE DISCOVERY AT THIS STAGE OF THE

23  CASE -- TO GO BACK IN TIME TO SOME OF OUR EARLIER

24  CONVERSATIONS -- WAS TO LOOK AT THE SCIENTIFIC DATA.  AND THIS

25  ANECDOTAL NOTE OR COMMUNICATION IS WAY BEYOND THE SCOPE THAT

1    THE COURT HAS NARROWLY CRAFTED TO DATE.

2         SO I DO FIND INTERROGATORY 26 OVERBROAD, DESPITE THAT

3    THERE IS RESPONSES FROM A VARIETY OF THE DEFENDANTS, CITING TO

4    BATES DOCUMENTS, CUSTODIAL FILES, AND SO FORTH.  AND TO SOME

5    DEGREE THE PLAINTIFFS DO HAVE TO GO THROUGH AND ANALYZE THE

6    DATA, AS THEY WOULD IN ANY EVENT.

7         THE KEY HERE, I BELIEVE, IS THAT WHAT YOU'RE ASKING

8    FOR, IN LARGE PART, IS THE WORK PRODUCT OR THE

9    BEHIND-THE-SCENES EFFORTS OF COUNSEL.  THEY HAVE CERTIFIED

10   THEY'VE MADE REASONABLE INQUIRY.  THAT IS WHAT RULE 26(G)

11   REQUIRES, AND THEY APPEAR TO HAVE MET THAT.

12        SHOULD THE LATER DEVELOPMENTS IN THE CASE SHOW THAT

13   THEY WERE NOT IN EARNEST IN THOSE CERTIFICATIONS OF THE

14   PRODUCTIONS, THEN THAT WOULD BE A CAUSE TO LOOK AT THE

15   ASSESSMENT OF SANCTIONS, COST-SHIFTING OR SOMETHING, FOR A

16   FAILURE TO HAVE APPROPRIATELY DONE SO.

17        BUT THE COURTS NEVER REQUIRE A DUE DILIGENCE

18   COMPONENT TO THE RESPONSE.  WE TAKE COUNSEL AT THEIR WORD THAT

19   THE PROCESS HAS BEEN COMPLETE AND REASONABLE.  AND WHERE

20   EVIDENCE TO THE CONTRARY SURFACES, THEN WE'LL GET INTO THAT

21   INQUIRY.

22        I DISAGREE WITH THE PLAINTIFFS' ANALYSIS THAT THE

23   DEFENDANTS' RESPONSES TO INTERROGATORIES -- OR RESPONSES TO

24   REQUESTS FOR PRODUCTION VIOLATE THE SPIRT OR THE LETTER OF RULE

25   34.  INDEED, THESE DOCUMENTS PURPORT TO HAVE BEEN PRODUCED AS

1  THEY ARE KEPT IN THE NORMAL COURSE OF BUSINESS, AND THAT IS

2  ALTERNATIVE NUMBER TWO.  IF YOU READ RULE 34, AS I'M SURE YOU

3  ALL HAVE, THEY DON'T NEED TO IDENTIFY.

4       BUT AS I LOOK THROUGH THE VARIOUS RESPONSES FROM THE

5  EXHIBITS THAT WERE PRODUCED BY THE PLAINTIFFS, THERE IS A LOT

6  OF REFERENCE TO EITHER PARTICULAR CUSTODIANS OR PARTICULAR

7  BATES-STAMPED DOCUMENTS.  AND THE TYPE OF SPECIFICITY REQUIRED

8  TO MEET THE SPIRIT, AS WELL AS THE LETTER OF THE LAW, EXISTS.

9       NOW, YOU'VE GOT ISSUES WITH REGARD TO EITHER

10  SOMETHING THAT CAN'T BE LOCATED, SOMETHING DISCRETE -- FOR

11  INSTANCE, THIS DISCUSSION ABOUT THE MINUTES OF THE TEAM WHICH

12  WE NOW LEARN ARE REALLY AGENDAS.  IF YOU CAN'T FIND THE

13  AGENDAS, CALL COUNSEL.  THEY CERTAINLY WOULD BE PROFESSIONAL

14  ENOUGH TO SAY WHERE THEY ARE OR DOUBLECHECK TO MAKE SURE YOU

15  HAVE GOT THEM.

16       A LOT OF THIS STATISTICAL ANALYSIS DEBATE AND THE

17  SPREADSHEET ISSUE SEEMS TO BE SOMETHING STILL IN PLAY AS IT

18  GOES NOT TO THE STATISTICAL ANALYSIS OF THE SPREADSHEET SO MUCH

19  AS THE RAW DATA THAT UNDERLIES IT.  WHICH, I THINK, WOULD

20  BENEFIT FROM SOME PROPORTIONALITY ANALYSIS BETWEEN THE SIDES,

21  PERHAPS EVEN AN APPROACH BY WAY OF SAMPLING, TO THE EXTENT THAT

22  THERE IS A HUGE MOUNTAIN OF DATA, WHICH COST AND TIME MAY NOT

23  YIELD A GREAT DEAL OF BENEFIT.  SO I URGE YOU TO CONSIDER MAYBE

24  SAMPLING OR SOME LIMITED INITIAL PRODUCTION IN THE INTEREST OF

25  SEEING IF IT'S WORTH DOING THE WHOLE NINE YARDS HERE.

SEPTEMBER 10, 2014

1          BUT ON ITS FACE I'M GOING TO DENY THE MOTION TO

2     COMPEL, FINDING INTERROGATORY 26 OVERBROAD, FINDING THERE BEING

3     APPROPRIATE COMPLIANCE UNDER RULE 33 IN RESPONDING TO

4     INTERROGATORY 25, FINDING COMPLIANCE BY PRODUCING THE DOCUMENTS

5     AND CERTIFYING THEM AS COMPLETE.  EVEN THOUGH THEY REFER TO

6     OTHER DATA, THAT IS FULLY CONTEMPLATED NOT ONLY IN THE

7     ELECTRONIC AGE -- AND I'M ONLY LOOKING AT THE RULES.  THE ESI

8     PROTOCOL IS CERTAINLY APPROPRIATE AS IT GOES TO FORMAT AND

9     OTHER PARTICULARS OF THE ESI CONSTRUCT.  BUT IN TERMS OF

10    MEETING THE LETTER OF RULE 34, I FIND THE DEFENDANTS HAVE.

11         SO THE MOTION TO COMPEL IS DENIED.  AND WE'LL

12    CERTAINLY UNDERTAKE TO DISCUSS THE RAW DATA ISSUE AFTER YOU

13    HAVE COMPLETED THE PROCESS ON THAT, AND THESE OTHER ISSUES

14    WHICH ARE PENDING IN OTHER MATTERS.

15         SO I'M DENYING THE MOTIONS.  AND TURN YOU BACK TO

16    YOUR OWN DEVICES TO CONTINUE TO MEET AND CONFER, WITH THE IDEA

17    THAT WE'LL BE TALKING ON STATUS, I THINK, NEXT WEEK; AND THE

18    WEEK AFTER, WE HAVE ANOTHER ONE OF THESE ON SOME MORE DISCRETE

19    ISSUES OF THE DATA THAT IS THE CENTER OF THE CASE.

20         SO THAT IS HOW I'LL LEAVE IT WITH YOU FOR TODAY.  AND

21    I HAVE TO RUN TO ANOTHER HEARING, SO I'M GOING TO TURN YOU

22    LOOSE AND WE'LL TALK TO YOU NEXT WEEK.  SO THANKS VERY MUCH.

23

24

25

SEPTEMBER 10, 2014

1      **MS. REYES:**  THANK YOU, YOUR HONOR.

2      **MR. KENNERLY:**  THANK YOU, YOUR HONOR.

3  (PROCEEDINGS CONCLUDED AT 10:58 A.M.)

4                      CERTIFICATION

5          I HEREBY CERTIFY THAT I AM A DULY APPOINTED,
   QUALIFIED AND ACTING OFFICIAL COURT REPORTER FOR THE UNITED
6  STATES DISTRICT COURT; THAT THE FOREGOING IS A TRUE AND CORRECT
   TRANSCRIPT OF THE PROCEEDINGS HAD IN THE AFOREMENTIONED CAUSE
7  ON SEPTEMBER 10, 2014; THAT SAID TRANSCRIPT IS A TRUE AND
   CORRECT TRANSCRIPTION OF MY STENOGRAPHIC NOTES; AND THAT THE
8  FORMAT USED HEREIN COMPLIES WITH THE RULES AND REQUIREMENTS OF
   THE UNITED STATES JUDICIAL CONFERENCE.

9

10  DATED:    SEPTEMBER 11, 2014, AT SAN DIEGO, CALIFORNIA.

11          S/N_____
            JEANNETTE N. HILL, OFFICIAL REPORTER, CSR NO. 11148
12

13

14

15

16

17

18

19

20

21

22

23

24

25

                      SEPTEMBER 10, 2014