# EXHIBIT 38

Case 3:13-md-02452-AJB-MDD Document 950-6 Filed 02/18/15 PageID.11510 Page 2 of 4
Demouchette v. Dart, Not Reported in F.Supp.2d (2012)
2012 WL 472917

2012 WL 472917
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois,
Eastern Division.

Joseph DEMOUCHETTE, Jr., et al., Plaintiffs

v.

Sheriff of Cook County Thomas DART,
in his official capacity, et al., Defendants.

No. 09 C 6016. | Feb. 10, 2012.

## MEMORANDUM OPINION AND ORDER

ARLANDER KEYS, United States Magistrate Judge.

 **\*1** On September 28, 2008, Joseph Demouchette, a pre-trial detainee, hung himself in a jail cell operated by the Cook County Department of Corrections. His mother and his minor children sued the Sheriff of Cook County and numerous individual defendants, alleging claims under 42 U.S.C. § 1983, as well as various state law claims, including claims of wrongful death, intentional infliction of emotional distress, and negligence, a survivor action and an indemnification claim.

The case is before the Court on two motions: a motion for sanctions filed by a number of the individual defendants, and a motion filed by the plaintiffs to disqualify Lindsay Hayes, the expert retained by the Cook County Sheriff's Department. For the reasons explained below, both motions are denied.

### A. *Defendants' Motion for Sanctions*

On February 7, 2011, the plaintiffs filed their First Amended Complaint, alleging violations of the Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983 for Failure to Provide Adequate Medical Care; they also alleged state law wrongful death, negligence and intentional infliction of emotional distress claims, as well as a survivor claim, a *respondeat superior* claim and an indemnification claim. Although the claims remained constant, for the first time, the plaintiffs named certain defendants they claimed were liable for Mr. Demouchette's death, whereas the initial complaint named "John Doe Correctional Officers and Supervisors." The newly-named defendants moved to dismiss, arguing that the complaint that named them was untimely. And, in a decision dated April 12, 2011, Judge Manning agreed. In doing so, Judge Manning made clear that it was not a close call, that the statute of limitations had clearly run and that the law clearly did not allow for any kind of relation back under the circumstances.

The defendants who won on the motion to dismiss—Sergeant Turner, Sergeant Hayes, Chief Martinez, Chief Salazar, Superintendent Janus and Director Romero—have now moved for sanctions against Heidi Sleper, one of the lawyers for the plaintiffs. The defendants argue that the statute of limitations had clearly run when Ms. Sleper filed Plaintiffs' First Amended Complaint, and that, accordingly, the filing of that pleading, as well as the filing of Plaintiffs' Response to Defendants' Motion to Dismiss, Plaintiffs' Motion for Default Judgment and Plaintiffs' motion to compel discovery responses, are all sanctionable under Rule 11 and 28 U.S.C. § 1927.

Rule 11 provides that

> [b]y presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney ... certifies that to the best of [her] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose ....; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery ....

 **\*2** Fed.R.Civ.P. 11(b)(1)-(3). Along similar lines, 28 U.S.C. § 1927 provides that "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

As explained, Judge Manning's decision on the motion to dismiss makes clear that it was not a close case. And, in rejecting plaintiffs' arguments in opposition to the motion to dismiss, the court consistently noted that the law was well established and that the facts and law were clear. One need not read too much between the lines to see that, in Judge Manning's view, the complaint and response to the motion to dismiss had no firm factual or legal basis. Indeed, Ms. Sleper argued that the Amended Complaint related back to the initial complaint because, given Mr. Demouchette's death, it was difficult if not impossible to ascertain the names of the defendants involved. Yet, as the defendants point out, she knew the names of the people involved by at least July 14, 2010—more than two months before the statute of limitations ran—because she specifically identified them all by name in Plaintiffs' Initial Rule 26 Disclosures, which were served on that date. Thus, for her to claim that she somehow could not have known the relevant defendants' names prior to the running of the statute of limitations was not only irrelevant under the law, but a complete falsehood.

Having said that, the Court recognizes that counsel may have had an argument that the claims of Mr. Demouchette's children—the § 1983 claim as well as the state law claims—do not accrue until they reach the age of majority, which would save them from being barred by the applicable statutes of limitations. Certainly she could make such an argument using *Morales–Placencia v. City of Chicago,* No. 08 C 5365, 2011 WL 1542964, at *2 (April 21, 2011), a case issued just days after Judge Manning issued her decision, which held that a minor child's state law and § 1983 claims were not barred by the two-year statute of limitations (though the Court notes that in that case the defendants were named in both the initial complaint and the amended complaint; it was the plaintiff who changed).

More importantly, Judge Manning's decision did nothing to obviate defendants' obligation to file an answer and to respond to discovery on the state law claims; the decision left those claims intact and, indeed, counsel for these defendants concedes that, given the minor status of the children, the state law claims remain viable despite the applicable statutes of limitations. Thus, even if the Court were inclined to agree that the § 1983 claims were so obviously time barred that the filing of the amended complaint violated Rule 11 (it is not), it would in no event order sanctions with regard to counsel's pursuit of the state law claims—whether via the filing of the amended complaint, the filing of the response to the motion to dismiss, the filing of the motion for default or the filing of the motion to compel responsive pleadings on those claims.

**B.** *Plaintiff's Motion to Disqualify Defendant's Expert*

**\*3** To assist in their defense of this case, the Office of the Cook County Sheriff retained Lindsay Hayes, who is purported to be "the nation's leading expert regarding Jail suicides." *See* Sheriff's Response to Plaintiff's Motion to Disqualify, p. 1. The plaintiffs have moved to disqualify Mr. Hayes based upon a conflict of interest; more specifically, plaintiffs argue that Mr. Hayes should be disqualified because of certain consultations and "multiple conversations" he had with plaintiffs' counsel, Heidi Sleper. In an affidavit submitted in support of the motion, Ms. Sleper states that she had exactly two telephone conversations with Mr. Hayes, during which she discussed some of the documentary evidence in the case, including the jail intake form and some medical records from prior periods of detention. She further states that she discussed with Mr. Hayes the plaintiffs' general theory of the case and theory of liability, and, in an *in camera* affidavit, she explains what those theories were and describes in greater detail the substance of what was discussed. Ms. Sleper concedes that, in both conversations, Mr. Hayes indicated that he would not take the case for the plaintiff.

Counsel for the Sheriff's Department disputes the substance of any communications. In response to the motion, counsel submitted an affidavit from Mr. Hayes, in which he represents that he does not recall ever having spoken with Ms. Sleper; he further represents that, consistent with his standard practices and procedures, if he had spoken to her—especially to the extent she claims—he would have made notes about the case; yet his files contain no such notes.

"Courts have the power to disqualify an expert witness to protect the integrity of the adversary process and to promote public confidence in the legal system." *Allstate Insurance Co. v. Electrolux Home Products, Inc.,* No. 09 C 6379, —— F.Supp.2d ——, 2012 WL 13512, at *4 (N.D.Ill. Jan.4, 2012) (citing *Lifewatch Serv., Inc. v. Braemer, Inc.,* No. 09 C 6001, 2012 WL 3909483, at *1 (N.D.Ill. Sept.28, 2010)). In deciding whether to disqualify an expert on the basis of a potential conflict of interest, "[c]ourts typically apply a two-part test," asking first "whether the party seeking disqualification acted reasonably in assuming that a confidential relationship existed and, second, whether confidential information was exchanged requiring disqualification of the expert." *Bone Care International, LLC*

*v. Pentech Pharmaceuticals, Inc.,* No. 08 C 1083, 2009 WL 249386, at *1 (N.D.Ill. Feb.2, 2009) (citing *BP Amoco Chem. Co. v. Flint Hills Resources,* 500 F.Supp.2d 957, 960 (N.D.Ill.2007))."Some courts also balance the court's interest in protecting and preserving the integrity and fairness of judicial proceedings, ... with the notion that experts should be allowed to pursue their trade and parties to select their own experts...."*Id.*(citing *American Empire Surplus Lines Ins. Co. v. Care Ctrs., Inc.,* 484 F.Supp.2d 855, 856–57 (N.D.Ill.2007); *Chamberlain Group, Inc. v. Interlogix, Inc.,* 2002 WL 653893, at *4 (N.D.Ill. April 19, 2002))."The movant bears the burden of showing both the existence of a confidential relationship and the sharing of confidential information and cannot satisfy this burden with conclusory assertions."*Id.* (citing Chamberlain, 2002 WL 653893, at *4). This is a heavy burden, as "[t]he disqualification of experts is 'a drastic measure which courts should hesitate to impose except when absolutely necessary.' " *Bone Care,* 2009 WL 249386, at *1(quoting *Owen v. Wangerin,* 985 F.2d 312, 317 (7th Cir.1993)).*See also Allstate,* 2012 WL 13512, at *5 (quoting *BP Amoco Chem. Co. v. Flint Hills Resources,* 500 F.Supp.2d 957, 960 (N.D.Ill.2007)).

**\*4** Here, the Court finds that disqualification is not warranted. First, to the extent Ms. Sleper shared any confidential information or mental impressions, she acted unreasonably in assuming that a confidential relationship existed. Ms. Sleper and Mr. Hayes spoke via telephone for, at most, a combined total of 30 minutes in two separate conversations. Ms. Sleper shared the basic facts of the case, and generally discussed some of the documentary evidence, including the jail intake form and medical records obtained from the defendants. And even Ms. Sleper concedes that Mr. Hayes, upon hearing those basic facts, expressed no interest in taking the case. Even with her second call, he expressed no interest in the case. Given the limited contact and the superficial nature of the communications, it would have been unreasonable for Ms. Sleper to share confidential information with Mr. Hayes or to assume that a confidential relationship existed.

Having said that, even after reviewing Ms. Sleper's *in camera* affidavit, the Court is not convinced that any such information was shared. Mr. Hayes has no recollection of ever having spoken to Ms. Sleper; he kept no notes from any conversations, kept no file and has no documents relating to the case. According to Ms. Sleper, she discussed with Mr. Hayes the strengths and weaknesses of the case, her theories of liability and her strategy relating to the facts of the case. See Sleper Affidavit, ¶ 5. But, conclusory assertions are not enough to meet the heavy burden imposed on a disqualification motion, *Allstate,* 2012 WL 13512, at *5 (citing *BP Amoco,* 500 F.Supp.2d at 960), and, as the *in camera* affidavit makes clear, what she shared in terms of the facts came from either the complaint or the documents produced in discovery, and what she shared in terms of her theories of liability and case strategy was superficial and elemental.

In short, based on the record before it, the Court is not persuaded that there was anything confidential or privileged about the communications Ms. Sleper may have had with Mr. Hayes. To be sure, an expert may be disqualified on conflict of interest grounds when he switches sides, *e.g., Miller v. Lenz,* No. 08 C 773, 2009 WL 3172151, at *3 (N.D.Ill. Oct.2, 2009); *Bone Care,* 2009 WL 249386, at *1; *Chamberlain Group,* 2002 WL 653893, at *4. But that is not what happened here; indeed, Mr. Hayes was quite clearly never on the plaintiffs' side. He was never retained, he never even prepared or sent a retention letter; he was never paid a dime, was never sent any information or documents, was never provided with any confidential information or privileged communications. At best, Mr. Hayes conversed via telephone with plaintiffs' counsel for less than half an hour, received some very basic information about the case and clearly indicated his desire not to get involved on behalf of Mr. Demouchette or his family. That is not enough to get him tossed from the case. The motion to disqualify is denied.

### *Conclusion*

**\*5** For the reasons set forth above, Defendant's Motion for Sanctions [# 112] and Plaintiff's Motion to Disqualify the Defendant's Retained Expert [# 127] are denied. The case is set for a status hearing on Monday, March 5, 2012 at 9:00 a.m.