UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE INCRETIN-BASED THERAPIES PRODUCTS LIABILITY LITIGATION<br><br>*As to All Related and Member Cases* | Case No.: 13-md-2452-AJB-MDD<br><br>**ORDER DENYING PLAINTIFFS' MOTION TO RETAX COSTS**<br><br>**(Doc. No. 4077)** |

## I.   BACKGROUND

This is a multidistrict pharmaceutical products liability litigation involving claims that Amylin Pharmaceuticals, LLC ("Amylin"), Eli Lilly and Company ("Lilly"), Merck Sharp & Dohme Corp. ("Merck"), and Novo Nordisk Inc. ("Novo") (collectively, "Defendants") failed to warn that prescription brand-name drugs they manufacture and market cause, or increase the risk of, pancreatic cancer. In March 2021, the Court granted and entered summary judgment in favor of Defendants based on federal preemption and lack of general causation evidence. (Doc. Nos. 4048, 4051.) Defendants thereafter filed bills of costs. (Doc. Nos. 4058, 4059, 4060.) On May 4, 2021, the Clerk of Court determined the total costs taxed in favor of Defendants in the amount of $187,466.58 to Amylin, $76,357.06 to Lilly, $83,454.20 to Merck, and $258,633.75 to Novo. (Doc. No. 4074.)

The Court notes there are over 1,000 plaintiffs in this action. Some sued only some or only one of the four defendants. And some are subject to an agreement to dismiss appeal and waive costs. Before the Court is Plaintiffs' motion to re-tax bill of costs. (Doc. No. 4077.) Upon review of the parties' moving papers, the Court ordered Defendants to submit supplemental documentation regarding the scope of costs they are pursuing. (Doc. No. 5771.) The Court is in receipt of Defendants' supplemental brief. (Doc. No. 5893.) It contains a list of plaintiffs in this action and specifies which defendant(s) they sued, along with a notation as to whether they are subject to a cost waiver agreement. (*Id.*) For ease of reference, the Court has divided Defendants' list into four separate charts, one for each of the four defendants in this case, containing the names and number of plaintiffs who sued each of them. The charts are attached to this Order as Exhibits 1 through 4. Exhibit 1 is a chart of plaintiffs who sued Amylin, Exhibit 2 is a chart of plaintiffs who sued Lilly, Exhibit 3 is a chart of plaintiffs who sued Merck, and Exhibit 4 is a chart of plaintiffs who sued Novo. For the reasons set forth below, the Court **DENIES** Plaintiffs' motion to re-tax costs and **AWARDS** costs to Defendants on a pro-rata basis among each plaintiff identified in the attached exhibits, subject to the cost waiver agreement.[1]

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 54(d), a district court has broad discretion to vacate or amend a clerk's decision to tax costs. *Dawson v. City of Seattle*, 435 F.3d 1054, 1070 (9th Cir. 2006). While "the rule creates a presumption in favor of awarding costs to a prevailing party," it also "vests in the district court discretion to refuse to award costs." *Ass'n of Mexican-Am. Educators v. State of California*, 231 F.3d 572, 593 (9th

---

[1] To the extent that Plaintiffs assert that costs in this case cannot be awarded in a judicially manageable way, the Court disagrees. The supplemental documentation provided allows the Court to ensure that the costs awarded to each defendant are allocated only to those plaintiffs who sued them and are not subject to an agreement to waive appeal and costs. For the same reasons, the Court finds Plaintiffs' "jurisdictional and due process concerns" unavailing. This Order does not impose costs on non-parties, and Plaintiffs, who collectively centralized and pursued this litigation, were not prohibited from asserting any collective and/or individual arguments necessary to defend against the costs awarded.

Cir. 2000). The losing party bears the burden to "show why costs should not be awarded." *Save Our Valley v. Sound Transit*, 335 F.3d 932, 945 (9th Cir. 2003). Although a district court must "specify reasons" for its refusal to tax costs to the losing party, it need not "specify reasons for its decision to abide [by] the presumption and tax costs to the losing party." *Id.* at 945. Reasons for refusing to award costs include: (1) a losing party's limited financial resources; (2) misconduct by the prevailing party; (3) the chilling effect of imposing high costs on future civil rights litigants; (4) the closeness and difficulty of the issues in the case; (5) the prevailing party's recovery was nominal or partial; (6) the losing party litigated in good faith; and (7) the case presented a landmark issue of national importance. *Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1022 (9th Cir. 2003) (citing *Ass'n of Mexican-Am. Educators*, 231 F.3d at 592 n.15; *Save Our Valley*, 335 F.3d at 945).

In addition, 28 U.S.C. § 1920 "enumerates the expenses a federal court may tax as costs under the discretionary authority found in Rule 54(d)." *Alflex Corp. v. Underwriters Laboratories, Inc.* 914 F.2d 175, 176 (9th Cir. 1990) (citation omitted). Section 1920 provides:

> A judge or clerk of any court of the United States may tax as costs the following:
> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. While a court is limited to the items enumerated as taxable costs under § 1920, it is free to interpret the meaning and scope of such items. *Alflex*, 914 F.2d at 177. Civil Local Rule 54.1(b) also provides guidance concerning costs customarily awarded in the Southern District of California.

## III. DISCUSSION

Plaintiffs argue that (A) the bills of costs should be vacated; (B) Defendants' deposition costs exceed those allowed; and (C) Defendants failed to show that their documents were for copies necessarily obtained for use in the case. The Court discusses each argument in turn.

### A. Presumption in Favor of Awarding Costs

As the prevailing party, Defendants enjoy the presumption in favor of having costs awarded to them. *See Ass'n of Mexican-Am. Educators*, 231 F.3d at 593. And as the losing party, Plaintiffs bear the burden of showing why costs should not be awarded. *See Save Our Valley*, 335 F.3d at 945.

In support of their motion, Plaintiffs point to the parties' economic disparity, asserting that Defendants "make over $106 million in profits every day" and that Plaintiffs are "typical Americans." (Doc. No. 4077 at 4–5.) While the Court may consider economic disparity, the fact that Defendants have substantial financial resources alone is insufficient to overcome the presumption of awarding costs. *See, e.g., Gibbs v. Kaplan Coll.*, No. 1:14-CV-239-LJO-BAM, 2015 WL 4430881, at *3 (E.D. Cal. July 20, 2015) (denying a request to vacate costs where the only factor weighing in favor of the request was the "significant economic disparity" between the parties). Moreover, apart from their generalized speculation that each of the over 1,000 plaintiffs in this case have "a net worth below $100,000" and "would not be able to cover an unexpected charge of $400," (Doc. No. 4077 at 5), Plaintiffs offer no particularized evidence to show that awarding costs would render any of them indigent. Put simply, Plaintiffs bear the burden of showing why costs should not be awarded, yet they have not substantiated their financial hardship claims with any specific evidence. Consequently, the Court finds that the asserted financial factors do not weigh in favor of vacating costs.

Plaintiffs also argue that costs should be vacated because of the closeness and difficulty of the issues in this case, the public importance of failure-to-warn suits, and the chilling effect of awarding costs. The Court is unpersuaded that the totality of these

factors overcome the presumption of awarding costs. Although this action involved litigation in a developing area of the law—namely, federal preemption in the pharmaceutical drug labeling context—the Court notes that Plaintiffs continued to litigate this case despite the FDA's 2014 finding that the current data did not support a causal association between incretin-based drugs and pancreatic cancer and despite the lack of epidemiological evidence of general causation in later studies.

To be sure, the Court recognizes the importance of failure-to-warn actions as "an additional, and important, layer of consumer protection that complements FDA regulation." *Wyeth v. Levine*, 555 U.S. 555, 579 (2009). However, considering the relatively small awards owed by each plaintiff in this case, the Court does not find that awarding costs poses a risk of chilling future litigation. As delineated in the chart below, the record establishes that 455 plaintiffs sued Amylin, 445 plaintiffs sued Lilly, 1,112 plaintiffs sued Merck, and 342 plaintiffs sued Novo. (Doc. No. 5893.) Dividing the costs awarded to each defendant by the number of plaintiffs that sued that defendant, the Court determines the dollar amount owed by each plaintiff in this MDL as follows. *See In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. 2:14-MN-02502-RMG, 2018 WL 6990747, at *3 (D.S.C. Oct. 17, 2018) ("It is well established that in a multi-district litigation, 'the district court has discretion to apportion payment of jointly incurred costs among the losing parties.'" (citation omitted)).

//
//
//
//
//
//
//
//
//

| Defendant | Costs Taxed | Number of Plaintiffs Who Filed Suit | Costs Owed by Each Plaintiff Who Filed Suit[2] |
|---|---|---|---|
| Amylin Pharmaceuticals, LLC | $187,466.58 | 455 | $412.01 |
| Eli Lilly and Company | $76,357.06 | 445 | $171.59 |
| Merck Sharp & Dohme Corp. | $83,454.20 | 1,112 | $75.05 |
| Novo Nordisk Inc. | $258,633.75 | 342 | $756.24 |

Based on the foregoing, the Court finds that although the issues in this action were of public importance and not entirely clear-cut, Plaintiffs failed to present specific evidence of financial hardship, and the Court declines to find that the relatively small sum owed by each plaintiff poses a risk of deterring future pharmaceutical products liability litigation. Thus, upon careful consideration of the relevant factors, the Court finds that Plaintiffs have not overcome the presumption of awarding costs. Accordingly, the Court **DENIES** Plaintiffs' request to vacate the costs award.

### B. Depositions Costs

Turning to Defendants' requested deposition costs, the Court notes that upon consideration of Plaintiffs' objections, the Clerk did not tax the full amount requested because it found that some items listed by Defendants were not taxable. (Doc. No. 4074 at 3–4.) Plaintiffs renew their arguments that Defendants (1) seek costs for depositions that would not be used for trial preparation and (2) are not entitled to costs of deposition exhibits. (Doc. No. 4077 at 10–12.) Section 1920 provides that fees incurred for printed transcripts "necessarily obtained for use in the case" are taxable costs. 28 U.S.C. § 1920. Pursuant to Civil Local Rule 54.1(b)(3)(a), "[c]osts incurred in connection with taking depositions, including . . . the cost of an original and one copy of any deposition (including videotaped depositions) necessarily obtained for use in the case" are taxable.

---

[2] The Court is mindful that most, if not all, plaintiffs who sued Amylin, Lilly, and Merck are subject to an agreement to waive appeal and costs. The costs those plaintiffs would otherwise be accountable for are therefore waived by operation of the parties' agreement.

6

13-md-2452-AJB-MDD

S.D. Cal. Civ. L. R. 54.1(b)(3)(a). To be an allowable cost, the rule requires that "at the time it was taken it could reasonably be expected that the deposition would be used for trial preparation, rather than mere discovery." *Id.* The rule also explains that "[d]epositions need not be introduced in evidence or used at trial to be taxable." *Id.*

Plaintiffs' primary arguments against the deposition costs taxed are that Defendants should not be awarded costs for attending "depositions that were [not] relevant to their individual case" and "for witnesses who would not be called at trial in their individual cases." (Doc. No. 4077 at 10.) The arguments are unavailing. First, "[d]epositions need not be introduced in evidence or used at trial to be taxable." S.D. Cal. Civ. L. R. 54.1(b)(3)(a). Second, although Defendants manufactured different drugs, the medications at issue are all incretin-based therapies subject to the same federal regulatory standards. Moreover, Plaintiffs alleged that incretin-based therapies cause pancreatic cancer through the same biological mechanism. Considering Plaintiffs' global claims against the drugs manufactured by Defendants, the Court finds that depositions concerning the other drugs were relevant and "necessarily obtained for use in the case"—for example, in preparing to mount a federal preemption or lack of general causation defense. 28 U.S.C. § 1920; S.D. Cal. Civ. L. R. 54.1(b)(3)(a). Accordingly, the Court finds that at the time the depositions at issue were taken, Defendants could reasonably have expected that they would be used for trial preparation.

Plaintiffs additionally argue that Defendants "padded their deposition costs with the cost of reproducing deposition exhibits" and that these costs were "not necessary for the case." (Doc. No. 4077 at 12.) This contention is also unavailing. The Court agrees with other district courts that have found that "[e]xhibits attached to a deposition 'are essential to the deposition transcript' and are therefore recoverable as part of the cost of the deposition." *Johnson v. Holway*, 522 F. Supp. 2d 12, 19 (D.D.C. 2007) (quoting *OAO Alfa Bank v. Ctr. for Pub. Integrity*, No. CIV.A. 00-2208(JDB), 2006 WL 1313309, at *4 (D.D.C. May 12, 2006)). Thus, for the foregoing reasons, the Court **DENIES** Plaintiffs' motion to re-tax Defendants' deposition costs.

### C. Copies Necessarily Obtained for Use in the Case

Next, Plaintiffs assert that Defendants' request for copying costs did not comply with Local Rule 54.1(b)(6)(c), and that Defendants' "processing" costs are not recoverable. (Doc. No. 4077 at 13–17.) The Court is unpersuaded that Defendants' request for copying costs must be denied for failing to strictly adhere to the requirements of Local Rule 54.1(b)(6)(c). The Court agrees with Defendants' view that strict compliance with Local Rule 54.1(b)(6)(c) should not be fatal here. As Defendants point out, they produced, pursuant to the Federal Rules of Civil Procedure and the ESI Orders in this case, voluminous electronic documents to Plaintiffs and seek only to recover costs associated with such production. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 914, 927 (9th Cir. 2015) ("Section 1920(4) allows for the recovery of costs where the copies were obtained to be produced pursuant to Rule 34 or other discovery rules."). Defendants further explain that Plaintiffs received the voluminous data and are in possession of information necessary to justify the costs of those electronic productions. Plaintiffs' reply brief contains no arguments contending otherwise. As such, the Court does not find the lack of strict compliance with Local Rule 54.1(b)(6)(c) dispositive here.

Rather, the Court finds that Defendants provided sufficient information with respect to costs for electronic productions under the ESI Orders, and courts have found that the type of electronic discovery costs challenged here are proper under 28 U.S.C. § 1920(4). *See, e.g.*, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 932 (finding costs attributable to optical character recognition, converting documents to Tagged Image File Format (TIFF), and "endorsing" activities which were all required by the opposing party was taxable pursuant to 28 U.S.C. § 1920(4)); *Jardin v. DATAllegro, Inc.*, No. 08-CV-1462-IEG WVG, 2011 WL 4835742, at *6 (S.D. Cal. Oct. 12, 2011) ("[W]here the circumstances of a particular case necessitate converting e-data from various native formats to the .TIFF or another format accessible to all parties, costs stemming from the process of that conversion are taxable exemplification costs under 28 U.S.C. § 1920(4).").

To the extent that Plaintiffs take issue with Novo's Invoice No. 187350, dated November 30, 2019, in the amount of $111,157, the Court finds that Novo provided adequate information explaining "that the cost was associated with TIFF production comprising 526.6 GB of data, which was converted into the requested production format by Plaintiffs, hard drive data, which Novo explained described costs of producing electronic production on a physical, encrypted drive in accordance with Plaintiffs' requested production format, and postage/shipping." (Doc. No. 4091 at 19–20 (citations to Doc. No. 4058-3, Decl. of Raymond Williams, omitted).) Moreover, Plaintiffs' claim that Novo inappropriately included certain shipping costs is moot because the Clerk did not tax shipping and delivery charges. In addition, Novo represents that it is "willing to reduce all other costs taxed that were associated with hard drives, totaling $2,700" in good faith recognition that it inadvertently included a request for shipping costs for documents sent to its own expert. (*Id.* at 20 n.9.) Plaintiffs' objection to Novo's accounting of hard drive costs is therefore also moot.

Lastly, Plaintiffs argue that Defendants' processing costs are not compensable under the "'narrow construction' of when copies are necessarily obtained for use in a case." (Doc. No. 4077 at 14 (quoting *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 930).) Defendants maintain that their "memoranda of law, lawyer's affidavits, and invoices submitted with their respective applications for bills of costs properly support their requests for discovery-related exemplification costs that were necessary for use in the case." (Doc. No. 4091 at 21.) The Court agrees.

As to Novo, Plaintiffs again take issue with the November 2019 invoice, arguing that Novo "made no effort to distinguish between inbound or outbound costs." (Doc. No. 4077 at 16.) Novo states, however, that it need not make this distinction because it did not include inbound charges in its bill of costs. (Doc. No. 4091 at 21.) Plaintiffs also argue that there were no "TIFF Production" costs associated with discovery produced to Plaintiffs in November 2019 because the only discovery they received during that time were histopathological slides in their original form. (Doc. No. 4077 at 16.) Novo

maintains that in addition to the slides produced in their native format, the "production also included corresponding TIFF slip-sheets produced for each file." (Doc. No. 4091 at 19 n.8.) Plaintiffs do not contest this explanation. Accordingly, the Court **DENIES** Plaintiffs' motion to re-tax Novo's processing costs.

As to Amylin, Plaintiffs object to invoices they perceive as indicating that Amylin's discovery vendor, FTI Consulting, "was paying some other consultant" for "inbound processing" costs. (Doc. No. 4077 at 15.) The invoices, however, do not necessarily support Plaintiffs' view. They simply show that FTI Consulting charged Amylin a certain amount for each gigabyte of data processed; they make no reference to payments to other vendors. (*See, e.g.*, Doc. No. 4060-69 at 5.) In any event, whether FTI Consulting itself or another entity actually performed the processing of documents for which Amylin seeks to recover is inconsequential. Plaintiffs cite no authority for their contention that a party is precluded from recovering costs paid to its discovery vendor if the vendor outsourced some of its work.

Moreover, according to Amylin's counsel's declaration, "processing inbound" charges refer to "the costs charged by Amylin's discovery vendor for the copying of incoming data from Amylin into a discovery-appropriate format." (Doc. No. 4060-3 at 5.) Amylin also explains that pursuant to the ESI Orders in this case, the data had to be processed in a particular way to produce documents with the metadata and other characteristics intact. Plaintiffs do not contest that these processes were a necessary part of discovery in this case. Thus, the Court finds that Amylin's processing charges are recoverable under § 1920(4). *See Jardin*, No. 08-CV-1462-IEG WVG, 2011 WL 4835742 at *6-7 (affirming costs associated with producing "massive amounts of e-data stored in digital formats, including email files, attached documents, and data in several formats that require special software and proprietary licenses in order to gain access" and collecting cases approving similar processing and production costs). Accordingly, the Court **DENIES** Plaintiffs' motion to re-tax Amylin's processing costs.

As to Merck, Plaintiffs claim that the requested "processing inbound" and "processing outbound" costs were incurred "*entirely* for the convenience of Merck's counsel." (Doc. No. 4077 at 16 (emphasis in original).) Plaintiffs appear to argue that Merck's "processing inbound" costs for scanning incoming paper documents from Merck into a text-searchable, discovery-appropriate format are not recoverable as a copy because Merck has not shown that they "were actually produced to Plaintiffs." (*Id.*) Plaintiffs cite no authority for their proposition, and § 1920(4) requires only that scanned documents were "necessarily obtained for use in the case." As such, the Court rejects this objection. *See, e.g.*, *Genuine Enabling Tech. LLC v. Nintendo Co., Ltd.*, 2021 WL 211536, at *2 (W.D. Wash. Jan. 21, 2021) (rejecting the argument that "documents cannot be considered 'necessary'" unless they were "used at depositions or in briefs").

With respect to the "processing outbound" charges, Plaintiffs point to a $6,375 charge and argue that that it is impossible to know what services that charge entailed, who performed it, and why it was so expensive. The objection is unavailing. Merck's counsel's declaration explains that those charges were "costs charged by Merck's discovery vendor for the copying of scanned documents from Merck into a discovery-appropriate format." (Doc. No. 4056-3 at 4.) Moreover, the record shows that the total for the charges at issue was $6,375 because the copying of scanned documents for that instance involved 5.0 GB of copied at $1,275 per GB. (*Id.*; Doc. No. 4056-6 at 2.) Accordingly, the Court finds Merck's scanning costs recoverable under § 1920(4) and therefore **DENIES** Plaintiffs' motion to re-tax Merck's processing costs.

//
//
//
//
//

## IV. CONCLUSION

For the reasons stated, Plaintiffs' motion to re-tax costs is **DENIED**. However, in light of Novo's withdrawal of its request for costs associated with hard drives, which total $2,700, the Court amends the costs taxed as follows.

| Defendant | Costs Taxed | Number of Plaintiffs Who Filed Suit | Costs Owed by Each Plaintiff Who Filed Suit |
|---|---|---|---|
| Amylin Pharmaceuticals, LLC | $187,466.58 | 455 | $412.01 |
| Eli Lilly and Company | $76,357.06 | 445 | $171.59 |
| Merck Sharp & Dohme Corp. | $83,454.20 | 1,112 | $75.05 |
| Novo Nordisk Inc. | $258,633.75 - $2,700 $255,933.75 | 342 | $748.34 |

Accordingly, as outlined in the above chart, the Court **AWARDS** costs to Defendants on a pro-rata basis among each plaintiff identified in the attached exhibits, subject to the costs waiver agreement.

**IT IS SO ORDERED**.

Dated: December 17, 2021

Hon. Anthony J. Battaglia
United States District Judge